1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

APPLIED MEDICAL RESOURCES CORPORATION,

                   Plaintiff,

v.

MEDTRONIC, INC.,

                   Defendant.

Case No. 8:23-cv-00268-WLH-DFM

**ORDER RE DEFENDANT'S
MOTION TO DISMISS [19-1]**

## I.    BACKGROUND

      This is an antitrust action.  Plaintiff Applied Medical Resources Corporation ("Applied") and Defendant Medtronic, Inc. ("Medtronic") manufacture and distribute medical devices.  (Compl., Docket No. 1 ¶¶ 1, 4).  Both companies produce advanced bipolar devices—instruments surgeons use to "dissect, cut, seal, and divide tissue." (*Id.* ¶ 29).  Like other sellers of medical devices, Medtronic sells its advanced bipolar device, Ligasure, either directly to hospitals or through group purchasing organizations ("GPOs"), which negotiate prices on behalf of hospital groups.  (*Id.* ¶¶ 32, 81–102).  Applied claims that Ligasure sales make up 78% of all advanced

bipolar device sales in the United States.  (*Id.* ¶¶ 49, 50).

The Complaint alleges that Medtronic's exclusionary contracts and bundled discounts have foreclosed competition by preventing hospitals and GPOs—the only prospective clients in the market for advanced bipolar devices—from purchasing the devices from any manufacturer except Medtronic.  (*See, e.g.*, Compl. ¶¶ 112–114).  Applied contends Medtronic can maintain this outsized market share by entering into exclusionary contracts with hospitals and GPOs, which Medtronic attains in part by offering bundled discounts that run afoul of the antitrust laws.  (*Id.* ¶ 7).  The Complaint alleges that the relevant geographic market is the entire United States (Compl. ¶ 47) and that "[t]he advanced bipolar device market is highly concentrated and comprised of a small number of market participants."  (Compl. ¶¶ 49, 99).  Applied has also alleged that it is a more efficient producer of advanced bipolar devices due to its manufacturing practices and that it charges approximately 15–20% less than Medtronic for its device.  (Compl. ¶¶ 97, 110).  Yet, the Complaint continues, it and other small competitors would have to sell the devices at a loss to match Medtronic's bundled discount price.  (*Id.* ¶ 99).  The Complaint lists prospective clients with which Applied was negotiating (Compl. ¶ 193) and that at least one hospital indicated it would purchase Applied's product but chose instead to purchase Medtronic's discounted bundle (*Id.* ¶ 121.b.).

Applied brings federal claims under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2, and section 3 of the Clayton Act, 15 U.S.C. § 14.  (*Id.* ¶¶ 135–180).  Applied brings state claims under California's Cartwright Act, Cal. Bus. & Prof. Code § 16700, *et seq.*, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and a common law claim for intentional interference with prospective economic advantage.  (*Id.* ¶¶ 181–206).

Medtronic moves to dismiss.  (Mot. to Dismiss, Docket No. 19-1).  The Federal Trade Commission ("FTC") filed an amicus brief to correct what it sees as

Medtronic's "erroneous assertions and mistaken legal points." (Br. of FTC, Docket No. 27-1 at 1).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, "the reviewing court must accept plaintiff's allegations as true and construe them in the light most favorable to the plaintiff." *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). Importantly, "[a]ntitrust cases are not to be judged by a higher or different pleading standard than other cases." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 984 (9th Cir. 2000) (quotations and citations omitted). To survive a motion to dismiss, an antitrust plaintiff "need only allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by the antitrust laws." *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1136 (9th Cir. 2022) (quoting *Cost Mgmt. Servs., Inc. v. Wash. Nat. Gas Co.*, 99 F.3d 937, 950 (9th Cir. 1996)).

## III. DISCUSSION

Medtronic urges dismissal on the grounds that Applied (1) lacks standing to bring an antitrust claim against Medtronic and (2) fails to allege exclusionary conduct. (Mot. at 6, 11). Finding both arguments without merit, the Court **DENIES** Medtronic's Motion to Dismiss.

### A. <u>Standing</u>

To establish standing, Applied must allege an antitrust injury. *Brunswick Corp.*

*v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  Medtronic argues that Applied has failed to do so because it has only alleged injury to itself, not to the market in general.  (Mot. at 6).  This is not the case.  Applied has alleged that Medtronic's exclusionary contracts and bundled discounts have foreclosed competition by preventing hospitals and GPOs—the only prospective clients in the market for advanced bipolar devices—from purchasing the devices from *any manufacturer* except Medtronic.  (*See, e.g.*, Compl. ¶¶ 112–114).

Additionally, "convergence of injury to a market competitor and injury to competition is possible when the relevant market is both narrow and discrete and the market participants are few."  *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508–09 (9th Cir. 1989).   Medtronic argues that the relevant market is neither narrow nor discrete because it consists of thousands of national hospitals.  (*See* Mot. at 8).  While the geographic market is *a* relevant market, it is not the only relevant market.

The Ninth Circuit has defined "geographic market" to encompass the "'area of effective competition'... where buyers can turn for alternate sources of supply."  *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1218 (9th Cir.1977) (citing *Otter Tail Power Co. v. United States*, 410 U.S. 366, 369 n.1 (1973) and *Standard Oil Co. v. United States*, 337 U.S. 293, 299–300 n.5 (1949)).  The Ninth Circuit has also defined a "product market," however, to "include[] the pool of goods or services that enjoy reasonable interchangeability of use and cross elasticity of demand."  *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1446 (9th Cir. 1988) (citing *Syufy Enterprises v. American Multicinema, Inc.*, 793 F.2d 990, 994 (1986)).

Applied admits that the relevant *geographic market* is the entire United States (Compl. ¶ 47), but it also alleges that the *product market* for advanced bipolar devices consists of only a few competitors.  (Compl. ¶¶ 49 ("The advanced bipolar device market is highly concentrated and comprised of a small number of market

participants."), 99).  Choosing between equally relevant markets (geographic v. product) in evaluating injury to competition is "entirely unnecessary."  *Oltz*, 861 F.2d at 1446 (affirming jury instruction adopting narrower definition of market where "the exclusive arrangement potentially affected both markets, and both were relevant to the search for competitive harm").  Because Applied has alleged foreclosure of competition in a relevant market, the Court finds that Applied has adequately alleged antitrust injury.[1]

### B. Exclusionary Conduct

Medtronic also argues that Applied has not adequately alleged exclusionary conduct through exclusive contracts or bundled discounts.  (Mot. at 11–16).  Medtronic largely supports its argument by disputing Applied's claims on the merits. (*Id.*)  For example, Medtronic asserts that "[b]undled discounts… are almost always procompetitive and lawful" (Mot. at 13) and that Medtronic's contracts with hospitals do not qualify as exclusive under *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 997 (9th Cir. 2010), in which the Ninth Circuit held that "the 'easy terminability' of an exclusive dealing arrangement 'negates substantially its *potential* to foreclose competition.'"  (Mot. at 9 (citation and brackets omitted) (emphasis added)).  This type of factual dispute may not be resolved by a motion to dismiss.

In addition, Medtronic asserts that to adequately plead that Medtronic's bundled discounts are unlawful, Applied needs to allege more facts showing that Medtronic

---

[1] Medtronic also argues that to establish standing Applied must "offer factual allegations regarding the *portion of market-wide sales* that were foreclosed by the alleged conduct."  (Mot. at 7 (emphasis in original)).  Applied estimates that Medtronic has foreclosed competition "in over 70% of the U.S. market for advanced bipolar devices."  (Compl. ¶ 19).  While it is unclear how Applied reached this number, the FTC correctly points out in its amicus brief that there is no rule that a plaintiff must calculate and allege the exact portion of foreclosed sales in an initial complaint.  (Br. of FTC at 5–6).  Accordingly, the Court does not give this number great weight in deciding that Applied has alleged substantial foreclosure.

sells advanced bipolar devices below cost.  (Mot. at 14–15).  The Ninth Circuit uses the "discount attribution" standard to determine whether bundled discounts are unlawful.  Under the discount attribution standard,

> the full amount of the discounts given by the defendant on the bundle are allocated to the competitive product or products. If the resulting price of the competitive product or products is below the defendant's incremental cost to produce them, the trier of fact may find that the bundled discount is exclusionary for the purpose of § 2. This standard makes the defendant's bundled discounts legal unless the discounts have the potential to exclude a *hypothetical* equally efficient producer of the competitive product.

*Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 906 (9th Cir. 2008) (emphasis in original).

This standard does not require the plaintiff to prove the defendant's costs in a complaint.  Indeed, when it adopted this standard, the Ninth Circuit recognized the informational asymmetry between competitors.  *Id.* at 907–08 ("under the discount attribution standard a bundled discounter need not fret over and predict or determine its rivals' cost structure").  Applied has alleged that it is a more efficient producer of advanced bipolar devices due to its manufacturing practices and that it charges approximately 15–20% less than Medtronic for its device.  (Compl. ¶¶ 97, 110).  Yet, Applied alleges, it and other small competitors would have to sell the devices at a loss to match Medtronic's bundled discount price.  (*Id.* ¶ 99).  The necessary conclusion to be drawn from these allegations is that Medtronic is selling its devices below cost, so this is enough to state a claim.  *See, e.g.*, *Blue Sky Color of Imagination, LLC v. Mead Westvaco Corp.*, No. CV 10-02175 DDP ANX, 2010 WL 4366849, at *4 (C.D. Cal. Sept. 23, 2010) (denying motion to dismiss where complaint alleged that defendant "use[d] a bundling pricing scheme to sell dated goods below cost").

Because the Court finds that Applied has standing and adequately pleads its federal claims, it **DENIES** Medtronic's Motion as to Applied's first through fifth causes of action.

### C. <u>State Law Claims</u>

Medtronic argues that Applied's state law claims fail on the same grounds as its federal claims.  (Mot. at 16).  The Court rejects this argument for the reasons above.

Additionally, Medtronic argues that Applied's common law claim for intentional interference with prospective economic advantage fails because the business relationships Applied alleges are too "speculative." (Mot. at 17–18).  It is true that "a plaintiff that wishes to state a cause of action for this tort must allege the existence of an economic relationship with some third party that contains the *probability* of future economic benefit to the plaintiff."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1164 (2003) (emphasis added).  Applied adequately alleges probable business relationships, however; not only does Applied list prospective clients with which it was negotiating (Compl. ¶ 193), but it also alleges that at least one hospital indicated it would purchase Voyant but backed out in favor of purchasing Medtronic's discounted bundle (*Id.* ¶ 121.b.).  Applied's state law claims are therefore adequately pled.

## IV.   CONCLUSION

While the Court is cognizant that "proceeding to antitrust discovery can be expensive," *Twombly*, 550 U.S. at 546, it cannot dismiss a complaint that adequately states a plausible claim for relief.  The Court finds that Applied's Complaint does so.  For the foregoing reasons, Medtronic's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated:  August 2, 2023

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE