Cleary Gottlieb Steen & Hamilton LLP
Leah Brannon (*pro hac vice*)
George S. Cary (State Bar No. 73858)
Alan B. Freedman (*pro hac vice*)
lbrannon@cgsh.com
gcary@cgsh.com
afreedman@cgsh.com
2112 Pennsylvania Ave., NW
Washington, DC 20037
Telephone: (202) 974-1500
Facsimile: (202) 974-1999

Greenberg Traurig LLP
Robert J. Herrington (State Bar No. 234417)
Richard Tabura (State Bar No. 298677)
robert.herrington@gtlaw.com
richard.tabura@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800

*Attorneys for Defendant Medtronic, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED MEDICAL RESOURCES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MEDTRONIC, INC.,<br><br>Defendant. | Case No. 8:23-cv-00268-WLH-DFM<br><br>**AMENDED ANSWER AND DEFENSES TO COMPLAINT**<br><br>**HON. WESLEY L. HSU** |

- 1 -

## INTRODUCTION

Defendant Medtronic, Inc. ("Medtronic") hereby responds to the Complaint and Demand for Jury Trial (ECF No. 1) ("Complaint") filed by Plaintiff Applied Medical Resources Corporation ("Applied" or "Plaintiff"). To the extent not specifically admitted herein, Medtronic denies all of the allegations in the Complaint. In addition, to the extent Plaintiff purports to quote from documents in the Complaint, Medtronic refers to the documents themselves for their actual and complete contents. Medtronic has not attempted to verify the accuracy of Plaintiff's quotations or even that the documents exist and, to the extent the quotations are incomplete, inaccurate, or misleading, or the underlying documents do not exist, Medtronic denies the allegations therein. Medtronic will insist on strict proof of any such statements, assuming such statements are deemed admissible, as to which Medtronic reserves its rights. Medtronic's use of the Complaint's defined terms is intended solely for the Court's convenience; Medtronic denies that Plaintiff has defined these terms appropriately.

Medtronic denies that it has engaged in illegal conduct or that any conduct that it is alleged to have engaged in has harmed Plaintiff, competition, or consumers. Medtronic denies that Plaintiff is entitled to judgment in its favor or any relief whatsoever, including the relief requested in paragraphs (A) through (H) of Plaintiff's prayer for relief.

## SPECIFIC DENIALS

1.    Medtronic admits that Applied is a medical device company. Medtronic denies that the public benefitted from Applied's lawsuit twenty years ago regarding endomechanical devices, which Applied lost, or that Applied's losing lawsuit stopped anticompetitive practices, reduced prices, or enhanced innovation. Medtronic lacks knowledge or information sufficient to form a belief as to the remainder of the allegations in Paragraph 1.

2.    Medtronic denies the allegations in Paragraph 2.

3.      Medtronic admits that Applied was founded in 1987 and that its advanced bipolar device is called "Voyant."  Medtronic denies that Applied has "unique abilities to serve healthcare."  Medtronic denies the allegations in the fourth sentence of Paragraph 3.  Medtronic denies that Voyant outperforms other advanced bipolar devices and costs 15-20% less.  Medtronic lacks knowledge or information sufficient to form a belief as to the remainder of the allegations in Paragraph 3.

4.      Medtronic admits the allegations in the first sentence of Paragraph 4. Medtronic admits that it offers a diverse portfolio of medical devices.  Medtronic admits that it acquired Covidien in a cash-and-stock transaction valued at approximately $49.9 billion, and that one of the rationales for the acquisition was to "provide a broader array of complementary therapies and solutions that can be packaged to drive more value and efficiency in healthcare systems."  Medtronic denies the remainder of the allegations in Paragraph 4.

5.      Medtronic denies the allegations in Paragraph 5.

6.      Medtronic admits that GPOs are designed to reduce costs by allowing hospitals to aggregate their purchasing power.  Medtronic admits that some GPOs adopted codes of conduct in the early 2000s.  Medtronic denies the remainder of the allegations in Paragraph 6.

7.      Medtronic denies the allegations in Paragraph 7.

8.      Medtronic lacks knowledge or information sufficient to form a belief as to statements hospitals made to Applied.  Medtronic denies the remainder of the allegations in Paragraph 8.

9.      Medtronic denies the allegations in Paragraph 9.

10.     Medtronic denies the allegations in Paragraph 10.

11.     Medtronic denies the allegations in Paragraph 11.

12.     Medtronic admits that the goal of the antitrust laws is to promote free and open competition.  Medtronic admits that Applied has brought this action.  Medtronic denies the remainder of the allegations in Paragraph 12.

13.    Medtronic admits the allegations in Paragraph 13.

14.    Medtronic admits the allegations in Paragraph 14.

15.    Medtronic does not contest that this Court has subject-matter jurisdiction over Plaintiff's federal-law claims.  Medtronic also does not contest that this Court may exercise supplemental jurisdiction over Plaintiff's state-law claims, but Medtronic reserves the right to contest supplemental jurisdiction in the event that Plaintiff's federal-law claims are ever dropped, dismissed, or otherwise removed from this case.

16.    Medtronic does not contest that this Court has personal jurisdiction over Medtronic or that Medtronic has substantial contacts with this District.  Medtronic denies the remainder of the allegations in Paragraph 16.

17.    Medtronic does not contest that it transacts business and venue is proper in this District.  Medtronic denies the remainder of the allegations in Paragraph 17.

18.    Medtronic admits that LigaSure and Voyant devices are manufactured and shipped in interstate commerce, and that it regularly sells and ships LigaSure devices throughout the country.  Medtronic denies the remainder of the allegations in Paragraph 18.

19.    Medtronic denies the allegations in the fifth sentence of Paragraph 19. Medtronic admits the remainder of the allegations in Paragraph 19.

20.    Medtronic admits that some electrosurgical handpieces are reusable, but to the extent Applied alleges that all handpieces may be reused Medtronic denies that. Medtronic admits the remainder of the allegations in Paragraph 20.

21.    Medtronic admits the allegations in Paragraph 21.

22.    Medtronic denies the allegations in the fourth sentence of Paragraph 22, including that termination of energy is "purely surgeon dependent" in all standard bipolar devices.  Medtronic admits the remainder of the allegations in Paragraph 22.

23.    Medtronic admits that the images in Paragraph 23 depict Bovie bipolar forceps.

24.     Medtronic denies that advanced bipolar devices categorically eliminate the need for multiple devices or instrument exchanges.  Medtronic admits that advanced bipolar devices may be manufactured in various lengths for laparoscopy and open surgery, but denies that the allegations in the penultimate sentence of Paragraph 24 reflect "major categories" of advanced bipolar devices.  Medtronic admits the remainder of the allegations in Paragraph 24.

25.     Medtronic admits the allegations in the first three sentences of Paragraph 25, and that the pictures show Harmonic ultrasonic devices.  Medtronic denies the remainder of the allegations in Paragraph 25.

26.     Medtronic admits the allegations in Paragraph 26.

27.     Medtronic admits the allegations in Paragraph 27, except that it denies particular tasks have only one "correct" or "well suited" device.

28.     Medtronic admits that the factors listed in Paragraph 28, among others, may be considered by practitioners when selecting a device for a particular procedure. Medtronic denies that any of these factors is decisive.  Further, Medtronic denies that the listed factors lead to material differences among potential devices, so the listed factors are at times not relevant to surgeons' decisions.

29.     Medtronic denies that advanced bipolar devices categorically eliminate the need for multiple devices.  Medtronic lacks knowledge or information sufficient to form a belief as to whether all monopolar and all standard bipolar devices are less expensive than all advanced bipolar devices.  Medtronic admits the remainder of the allegations in Paragraph 29.

30.     Medtronic admits that ultrasonic devices use a different technology than advanced bipolar devices and that they perform cutting and coagulation, but Medtronic otherwise denies the allegations in the first sentence of Paragraph 30. Medtronic denies that ultrasonic devices are not reasonably interchangeable with advanced bipolar devices.  Medtronic admits that ultrasonic devices have two blades, one of which oscillates at a very high frequency.  Medtronic admits that advanced

bipolar devices use algorithms to notify users that tissue is sealed. Medtronic lacks knowledge or information sufficient to form a belief as to whether all advanced bipolar algorithms are "sophisticated." Medtronic denies that ultrasonic devices require users to visually inspect target tissue. Medtronic lacks knowledge or information sufficient to form a belief as to the perceptions of unidentified people in the penultimate sentence of Paragraph 30. Medtronic denies the remainder of the allegations in Paragraph 30.

31.     Medtronic denies the allegations in Paragraph 31.

32.     Medtronic admits that advanced bipolar devices are often purchased by hospitals through GPO-negotiated contracts, and that GPOs are designed to reduce costs by aggregating hospital purchasing power. Medtronic admits that Paragraph 32 accurately quotes the cited U.S. Government Accountability Office report. Medtronic denies the remainder of the allegations in Paragraph 32, including because it lacks knowledge or information sufficient to form a belief as to the uncited quote attributed to a medical executive.

33.     Medtronic admits that Premier is one of the largest GPOs, and that it claims its members include more than 4,400 U.S. hospitals and more than 225,000 other providers and organizations. Medtronic denies the remainder of the allegations in Paragraph 33, and denies that Premier "controls" any purchases.

34.     Medtronic admits that the New York Times published stories about GPOs in 2002. Medtronic denies the remainder of the allegations in Paragraph 34, and refers to the cited documents for their actual and complete contents.

35.     Medtronic admits that Congress held hearings on GPOs. Medtronic denies the remainder of the allegations in Paragraph 35, and refers to the unidentified quoted materials for their actual and complete contents.

36.     Medtronic admits that GPOs adopted codes of conduct. Medtronic admits that Premier committed to stop investing in supply companies and limit its administrative fees, including by capping those fees at 3%. Medtronic admits that

Premier committed to reduce commitment levels and to award multisource agreements for surgeon-preference items.  Medtronic lacks knowledge or information sufficient to form a belief as to what Congress believed.  Medtronic denies the remainder of the allegations in Paragraph 36.

37.    Medtronic incorporates its response to Paragraph 36 and denies that Premier's current code of conduct removed all the clauses discussed in Paragraph 36. Medtronic also denies the remainder of the allegations in Paragraph 37.

38.    Medtronic denies the allegations in Paragraph 38.

39.    Medtronic denies the allegations in Paragraph 39.

40.    Medtronic admits that disposing of advanced bipolar devices after use reduces the potential for cross-contamination.  Medtronic admits that advanced bipolar devices can have advantages compared to monopolar and standard bipolar devices.  Medtronic lacks knowledge or information sufficient to form a belief as to whether all advanced bipolar devices use "advanced" algorithms that dictate "optimized" outcomes.  Medtronic denies the remainder of the allegations in Paragraph 40.

41.    Medtronic admits that it is the second largest manufacturer of ultrasonic devices.  Medtronic denies the remainder of the allegations in Paragraph 41.

42.    Medtronic admits that its LigaSure and Sonicision products use different brand names and are sold separately, just as J&J's Harmonic and Enseal products use different brand names and are sold separately. Medtronic admits that J&J manufactures ultrasonic devices under the Harmonic brand offered by its Ethicon company.  Medtronic admits that J&J acquired SurgRx in 2008, which manufactured Enseal advanced bipolar devices.  Medtronic lacks knowledge or information sufficient to form a belief as to any "long-term vision," "hope[]," or "realiz[ation]" of J&J, or what J&J sought to do with respect to its customers.  Medtronic denies the remainder of the allegations in Paragraph 42.

43.    Medtronic admits that in 2017 J&J acquired Megadyne, which

manufactured monopolar and standard bipolar devices. Medtronic lacks knowledge or information sufficient to form a belief as to the allegations in the second sentence of Paragraph 43, including as to J&J's product strategy and communications with customers. Medtronic admits that J&J sells Megadyne, Harmonic, and Enseal devices, but Medtronic denies the remainder of the allegations in Paragraph 43.

44.    Medtronic denies the allegations in Paragraph 44.

45.    Medtronic denies the allegations in Paragraph 45.

46.    Medtronic admits that the prices of some advanced bipolar devices are different from the prices of some other energy devices. Medtronic denies the remainder of the allegations in Paragraph 46.

47.    Medtronic admits that advanced bipolar devices sold within the U.S. must satisfy FDA rules and regulations. Medtronic admits that advanced bipolar device manufacturers who sell in the U.S. typically sell to all parts of the country, and that there are no substantial geographic barriers within the U.S. that prevent firms from selling advanced bipolar devices throughout the U.S. Medtronic denies the remainder of the allegations in Paragraph 47.

48.    Medtronic denies the allegations in Paragraph 48.

49.    Medtronic denies the allegations in Paragraph 49.

50.    Medtronic denies the allegations in Paragraph 50.

51.    Medtronic admits that Paragraph 51 accurately describes how to calculate the Herfindahl-Hirschman Index, which is sometimes used as a starting point to help conduct an evaluation of market concentration in connection with mergers. Medtronic denies the remainder of the allegations in Paragraph 51.

52.    Medtronic admits that the data discussed above includes Olympus in the advanced bipolar devices category. Medtronic denies the remainder of the allegations in Paragraph 52.

53.    Medtronic denies the allegations in Paragraph 53.

54.    Medtronic denies the allegations in Paragraph 54.

55.    Medtronic denies the allegations in Paragraph 55.

56.    Medtronic admits that supplier relationships with customers can benefit from the supplier's service team and the customer's use of the technology.  Medtronic admits that it has contracts with some GPOs and hospitals.  Medtronic denies the remainder of the allegations in Paragraph 56.

57.    Medtronic admits that sellers must obtain FDA approval to sell medical devices in the U.S.  Medtronic denies the remainder of the allegations in Paragraph 57.

58.    Medtronic admits that some manufacturers make capital investments in facilities and machinery.  Medtronic denies the remainder of the allegations in Paragraph 58.

59.    Medtronic admits that sellers may license IP or may develop their own IP.  Medtronic denies the remainder of the allegations in Paragraph 59.

60.    Medtronic admits that manufacturers typically employ some highly skilled professionals and individuals with technical backgrounds.  Medtronic denies the remainder of the allegations in Paragraph 60.

61.    Medtronic admits that its generators are located in many hospitals and that Voyant devices do not work well with Medtronic's generators.  Medtronic lacks knowledge or information sufficient to form a belief as to the factors that its competitors consider for "new deals."  Medtronic denies the remainder of the allegations in Paragraph 61.

62.    Medtronic denies the allegations in Paragraph 62.

63.    Medtronic admits that manufacturers benefit from having an established brand that is trusted by surgeons, hospitals, and GPOs.  Medtronic also admits that the founder of the New York Bariatric Group is a paid consultant for Medtronic. Medtronic denies the remainder of the allegations in Paragraph 63.

64.    Medtronic admits that in connection with a single bid for a single hospital in Portugal in 2021 it submitted a brochure comparing LigaSure and Voyant devices

that Applied represented to Medtronic's counsel in Portugal contained a claim that was based on a test of Voyant's handpiece paired with a Medtronic generator, and Medtronic's counsel in Portugal signed a statement of regret for using the brochure once.  Medtronic denies that the test cited in the Portugal brochure used a Medtronic generator with the Voyant handpiece, and further denies the remainder of the allegations in Paragraph 64.

65.     Medtronic denies the allegations in Paragraph 65.

66.     Medtronic admits that the LigaSure Maryland device was released after the LigaSure Blunt Tip device.  Medtronic denies the remainder of the allegations in Paragraph 66.

67.     Medtronic admits that Ethicon is the next largest seller of advanced bipolar devices in the United States.  Medtronic admits that Ethicon currently offers its Enseal products with separate buttons for cutting and sealing.  Medtronic also admits that Ethicon issued a recall for one of its Enseal devices in 2019.  Medtronic admits that prior Enseal products have used a single handle for cutting and sealing.  Medtronic lacks knowledge or information sufficient to form a belief as to the contents of the unidentified third-party report referenced in the last sentence of Paragraph 67.  Medtronic denies the remainder of the allegations in Paragraph 67.

68.     Medtronic admits that Olympus is the third largest seller of advanced bipolar devices in the United States and sells under the Thunderbeat brand.  Medtronic denies the remainder of the allegations in Paragraph 68.

69.     Medtronic lacks knowledge or information sufficient to form a belief as to communications between Applied and hospitals.  Medtronic admits that the language quoted in Paragraph 69 exists in a third-party report, but denies the remainder of the allegations in Paragraph 69, including because the quote has been cropped to change its meaning.  The third-party report states that there has been limited adoption of Applied's devices because surgeons believe that LigaSure devices are "the best products to use during procedures."

70.     Medtronic lacks knowledge or information sufficient to form a belief as the Applied's founding belief, its allocation of resources to research and development, or its production facilities.  Medtronic denies the remainder of the allegations on Paragraph 70.

71.     Medtronic denies the allegation that Applied is a reliable source of products.  Medtronic lacks knowledge or information sufficient to form a belief as to the remainder of the allegations in Paragraph 71.

72.     Medtronic lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 72.

73.     Medtronic admits that Applied accurately defines "seal time," "burst pressure," and "thermal spread measurements."  Medtronic admits that seals that burst open can have consequences, including those identified in Paragraph 73.  Medtronic denies the remainder of the allegations in Paragraph 73.

74.     Medtronic admits that by some measures it is the largest medical device company in the world, that it sells products that Applied does not sell, that it has a diverse portfolio of medical devices, and it offers discounts on some of those products to some hospitals.  Medtronic denies the remainder of the allegations in Paragraph 74.

75.     Medtronic denies the allegations in Paragraph 75.

76.     Medtronic denies the allegations in Paragraph 76.

77.     Medtronic denies the allegations in Paragraph 77.

78.     Medtronic denies the allegations in Paragraph 78.

79.     Medtronic denies the allegations in Paragraph 79.

80.     Medtronic denies the allegations in Paragraph 80.

81.     Medtronic admits that a new GPO agreement typically has a term of three years, at the end of which the GPO could terminate the agreement, negotiate a different one, or renew the original agreement.  Medtronic denies the remainder of the allegations in Paragraph 81.

82.     Medtronic lacks knowledge or information sufficient to form a belief as

to the nature of Premier's offers to other companies.  Medtronic denies the remainder of the allegations in Paragraph 82.

83.    Medtronic lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 83.

84.    Medtronic lacks knowledge or information sufficient to form a belief as to discussions between Applied and Premier, including the contents of Applied's bid, Applied's quoted prices, and statements Applied and Premier made.  Medtronic denies the remainder of the allegations in Paragraph 84.

85.    Medtronic denies the allegations in Paragraph 85.

86.    Medtronic denies the allegations in Paragraph 86.

87.    Medtronic denies the allegations in Paragraph 87.

88.    Medtronic admits that some GPOs have staff in some hospitals who promote some products covered by the GPO contract.  Medtronic denies the remainder of the allegations in Paragraph 88.

89.    Medtronic denies the allegations in Paragraph 89.

90.    Medtronic admits that some member hospitals have an ownership interest in some GPOs, and that some member hospitals negotiate additional agreements to seek better pricing through the GPO.  Medtronic denies the remainder of the allegations in Paragraph 90.

91.    Medtronic admits that the majority of GPO members who purchase advanced bipolar devices from Medtronic do so through the GPO contract.  Medtronic denies the remainder of the allegations in Paragraph 91.

92.    Medtronic denies the allegations in Paragraph 92.

93.    Medtronic denies the allegations in Paragraph 93.

94.    Medtronic denies the allegations in Paragraph 94.

95.    Medtronic admits that it sometimes offers discounts on products based on a customer's purchases.  Medtronic denies the remainder of the allegations in Paragraph 95.

96.    Medtronic denies the allegations in Paragraph 96.

97.    Medtronic lacks knowledge or information sufficient to form any belief as to communications between Applied and hospitals.  Medtronic denies the remainder of the allegations in Paragraph 97.

98.    Medtronic denies the allegations in Paragraph 98.

99.    Medtronic denies the allegations in Paragraph 99.

100.    Medtronic denies the allegations in Paragraph 100.

101.    Medtronic admits that some of its contracts last three years and that some customers choose to renew their contracts with Medtronic.  Medtronic denies the remainder of the allegations in Paragraph 101.

102.    Medtronic denies the allegations in Paragraph 102.

103.    Medtronic denies the allegations in Paragraph 103.

104.    Medtronic admits that hospitals purchase products based on surgeon preferences.  Medtronic denies the remainder of the allegations in Paragraph 104.

105.    Medtronic admits that it offers price lists to hospitals based on potential sales volumes and that hospitals can achieve discounts depending on what they choose to purchase.  Medtronic denies the remainder of the allegations in Paragraph 105.

106.    Medtronic denies the allegations in Paragraph 106.

107.    Medtronic denies the allegations in Paragraph 107.

108.    Medtronic denies the allegations in Paragraph 108.

109.    Medtronic denies the allegations in Paragraph 109.

110.    Medtronic denies the allegations in Paragraph 110.

111.    Medtronic denies the last sentence of Paragraph 111.  Medtronic lacks knowledge or information to form a belief as to the remainder of the allegations in Paragraph 111.

112.    Medtronic lacks knowledge or information sufficient to form a belief as to communications between Applied and hospitals.  Medtronic denies the remainder of the allegations in Paragraph 112.

113.    Medtronic denies the allegations in Paragraph 113.

114.    Medtronic denies the allegations in Paragraph 114.

115.    Medtronic denies the allegations in Paragraph 115.

116.    Medtronic denies the allegations in Paragraph 116.

117.    Medtronic denies the allegations in Paragraph 117.

118.    Medtronic lacks knowledge or information sufficient to form a belief as to which hospitals Applied believed it would be successful with and which hospitals Applied has tried to make sales to.  Medtronic denies the remainder of the allegations in Paragraph 118.

119.    Medtronic denies the allegations in Paragraph 119.

120.    Medtronic lacks knowledge or information sufficient to form a belief as to statements hospitals made to Applied.  Medtronic denies the remainder of the allegations in Paragraph 120.

121.    Medtronic lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 121.

122.    Medtronic denies the allegations in Paragraph 122.

123.    Medtronic denies the allegations in Paragraph 123.

124.    Medtronic lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 124.

125.    Medtronic denies the allegations in Paragraph 125.

126.    Medtronic denies the allegations in Paragraph 126.

127.    Medtronic admits that Applied is a seller of advanced bipolar devices. Medtronic lacks knowledge or information sufficient to form as belief as to Applied's efforts to convince hospitals to purchase its advanced bipolar devices.  Medtronic denies the remainder of the allegations in Paragraph 127.

128.    Medtronic denies the allegations in Paragraph 128.

129.    Medtronic admits that it has created playbooks with strategies for competing against manufacturers and sellers of competing products, including

Applied.  Medtronic denies that the goal of these playbooks is to prevent Applied from doing anything.  Medtronic denies the remainder of the allegations in Paragraph 129.

130.    Medtronic denies the allegations in Paragraph 130.

131.    Medtronic denies the allegations in Paragraph 131.

132.    Medtronic lacks knowledge or information sufficient to form a belief as to the allegations in the second and third sentences of Paragraph 132.  Medtronic denies the remainder of the allegations in Paragraph 132.

133.    Medtronic denies the allegations in Paragraph 133.

134.    Medtronic denies the allegations in Paragraph 134.

135.    Medtronic incorporates by reference its responses to paragraphs 1 through 135 as if fully set forth herein.

136.    Medtronic denies the allegations in Paragraph 136.

137.    Medtronic denies the allegations in Paragraph 137.

138.    Medtronic denies the allegations in Paragraph 138.

139.    Medtronic denies the allegations in Paragraph 139.

140.    Medtronic denies the allegations in Paragraph 140.

141.    Medtronic denies the allegations in Paragraph 141.

142.    Medtronic denies the allegations in Paragraph 142.

143.    Medtronic incorporates by reference its responses to paragraphs 1 through 143 as if fully set forth herein.

144.    Medtronic denies the allegations in Paragraph 144.

145.    Medtronic denies the allegations in Paragraph 145.

146.    Medtronic denies the allegations in Paragraph 146.

147.    Medtronic denies the allegations in Paragraph 147.

148.    Medtronic denies the allegations in Paragraph 148.

149.    Medtronic denies the allegations in Paragraph 149.

150.    Medtronic incorporates by reference its responses to paragraphs 1

through 150 as if fully set forth herein.

151.  Medtronic denies the allegations in Paragraph 151.

152.  Medtronic denies the allegations in Paragraph 152.

153.  Medtronic denies the allegations in Paragraph 153.

154.  Medtronic denies the allegations in Paragraph 154.

155.  Medtronic denies the allegations in Paragraph 155.

156.  Medtronic denies the allegations in Paragraph 156.

157.  Medtronic denies the allegations in Paragraph 157.

158.  Medtronic denies the allegations in Paragraph 158.

159.  Medtronic denies the allegations in Paragraph 159.

160.  Medtronic incorporates by reference its responses to paragraphs 1 through 160 as if fully set forth herein.

161.  Medtronic denies the allegations in Paragraph 161.

162.  Medtronic denies the allegations in Paragraph 162.

163.  Medtronic denies the allegations in Paragraph 163.

164.  Medtronic denies the allegations in Paragraph 164.

165.  Medtronic denies the allegations in Paragraph 165

166.  Medtronic denies the allegations in Paragraph 166.

167.  Medtronic denies the allegations in Paragraph 167.

168.  Medtronic denies the allegations in Paragraph 168.

169.  Medtronic denies the allegations in Paragraph 169.

170.  Medtronic incorporates by reference its responses to paragraphs 1 through 170 as if fully set forth herein.

171.  Medtronic denies the allegations in Paragraph 171.

172.  Medtronic denies the allegations in Paragraph 172.

173.  Medtronic denies the allegations in Paragraph 173.

174.  Medtronic denies the allegations in Paragraph 174.

175.  Medtronic denies the allegations in Paragraph 175.

176.    Medtronic denies the allegations in Paragraph 176.

177.    Medtronic denies the allegations in Paragraph 177.

178.    Medtronic denies the allegations in Paragraph 178.

179.    Medtronic denies the allegations in Paragraph 179.

180.    Medtronic denies the allegations in Paragraph 180.

181.    Medtronic incorporates by reference its responses to paragraphs 1 through 181 as if fully set forth herein.

182.    Medtronic denies the allegations in Paragraph 182.

183.    Medtronic denies the allegations in Paragraph 183.

184.    Medtronic denies the allegations in Paragraph 184.

185.    Medtronic denies the allegations in Paragraph 185.

186.    Medtronic denies the allegations in Paragraph 186.

187.    Medtronic denies the allegations in Paragraph 187.

188.    Medtronic denies the allegations in Paragraph 188.

189.    Medtronic denies the allegations in Paragraph 189.

190.    Medtronic denies the allegations in Paragraph 190.

191.    Medtronic incorporates by reference its responses to paragraphs 1 through 191 as if fully set forth herein.

192.    Medtronic denies the allegations in Paragraph 192.

193.    Medtronic denies the allegations in Paragraph 193.

194.    Medtronic denies the allegations in Paragraph 194.

195.    Medtronic denies the allegations in Paragraph 195.

196.    Medtronic denies the allegations in Paragraph 196.

197.    Medtronic denies the allegations in Paragraph 197.

198.    Medtronic denies the allegations in Paragraph 198.

199.    Medtronic denies the allegations in Paragraph 199.

200.    Medtronic denies the allegations in Paragraph 200.

201.    Medtronic incorporates by reference its responses to paragraphs 1

through 201 as if fully set forth herein.

202.    Medtronic denies the allegations in Paragraph 202.

203.    Medtronic denies the allegations in Paragraph 203.

204.    Medtronic denies the allegations in Paragraph 204.

205.    Medtronic denies the allegations in Paragraph 205.

206.    Medtronic denies the allegations in Paragraph 206.

## AFFIRMATIVE OR ALTERNATIVE DEFENSES

1.    The Complaint fails to state a claim upon which relief can be granted. *See generally* Mot. to Dismiss, ECF No. 19-1 ("MTD").

2.    Plaintiff's claims are barred, in whole or in part, by the statutes of limitations pursuant to 15 U.S.C. § 15b (four years), Cal. Bus. & Prof. Code § 16750.1 (four years), Cal. Bus. & Prof. Code. § 17208 (four years), and Cal. Code Civ. Proc. § 339 (two years).  Plaintiff alleges that it was aware of the challenged conduct by the "early 2000s," Compl. at ¶¶ 32–38, 83, and chose not to bring a claim against Medtronic despite this knowledge.  Plaintiff also alleges specific conduct that it was aware of in 2018.  *See* Compl. at ¶ 64.  Plaintiff has been aware of the conduct it challenges since long before the limitations periods, and sat on its rights without bringing a claim.

3.    Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.  The defense of laches looks to the periods in the statutes of limitations. Plaintiff alleges that it was aware of the challenged conduct by the "early 2000s," Compl. at ¶¶ 32–38, 83, and chose not to bring a claim against Medtronic despite this knowledge.  Plaintiff also alleges specific conduct that it was aware of in 2018.  *See* Compl. at ¶ 64.  Some purported lost sales identified in Plaintiff's Complaint will require discovery to identify when if ever the purported losses occurred.  Plaintiff's delay in bringing each of its claims after it had specific knowledge of the challenged conduct and purported harm is unfair and inequitable.

4.    Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks antitrust standing.  The effect, if any, of the challenged conduct is to require competitors including Plaintiff to decrease their prices, compete more aggressively, and manufacture higher-quality products.  These are procompetitive outcomes, not harm to competition, and therefore any "harm" to Plaintiff such as lost profits does not confer antitrust standing.  *See* MTD § IV(A).

5.    Plaintiff's claims are barred, in whole or in part, because Plaintiff did not suffer antitrust injury.  The effect, if any, of the challenged conduct is to require competitors including Plaintiff to decrease their prices, compete more aggressively, and manufacture higher-quality products.  Thus, if Plaintiff was harmed, such harm resulted from competition rather than from any harm to competition, and therefore any injury to Plaintiff such as lost profits does not constitute an injury cognizable under the antitrust laws.  *See* MTD § IV(A).

6.    Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to show that Defendant's sales resulted from predatory or exclusionary conduct.  The contracts with GPOs and hospitals that Plaintiff attacks are not exclusive because Medtronic's customers do not commit to purchase LigaSure exclusively.  Most of these contracts do not require customers to purchase anything at all.  Further, Medtronic's pricing is procompetitive: it allows buyers to get more for less, which benefits customers and patients.  Medtronic does not charge below-cost prices for LigaSure.  GPOs, hospitals, and surgeons find LigaSure to be higher quality than Voyant, and choose LigaSure for that reason and other lawful reasons.  *See* MTD § IV(B).

7.    Plaintiff's claims are barred, in whole or in part, because Plaintiff did not suffer an injury-in-fact.  Plaintiff did not lose sales because of the challenged conduct.  *See* MTD § IV(A)(1).  Plaintiff can reach customers beyond the avenues of sale that it alleges Defendant forecloses, such as by negotiating directly with hospitals.  Plaintiff is also free to compete, and has competed, for GPO contracts.  *See* MTD § IV(A)(2).

8.      Plaintiff's claims are barred, in whole or in part, because Plaintiff has not lost money or property as a result of any alleged unfair competition by Defendant. Plaintiff did not lose sales or business expectancies because of the challenged conduct. *See* MTD § IV(A)(1).  The contracts with GPOs and hospitals that Plaintiff attacks are not exclusive because Medtronic's customers do not commit to purchase LigaSure exclusively.  Most of these contracts do not require customers to purchase anything at all.  Further, Medtronic's pricing is procompetitive: it allows buyers to get more for less, which benefits customers and patients.  Medtronic does not charge below-cost prices for LigaSure.  GPOs, hospitals, and surgeons find LigaSure to be higher quality than Voyant, and choose LigaSure for that reason and other lawful reasons.  *See* MTD § IV(B).  As a result, Plaintiff's purported lost sales and business expectancies are purely hypothetical.

9.      Plaintiff's claims are barred, in whole or in part, because Defendant has not committed any unlawful conduct that would serve as an underlying violation supporting a claim of unfair competition.  The challenged conduct does not violate the Sherman Act or Clayton Act, and therefore does not give rise to claims under the Cartwright Act or Unfair Competition Law.  *See* MTD § IV(C)(1).

10.     Plaintiff's tortious interference and unfair competition claims are barred, in whole or in part, because Plaintiff's alleged business expectancies underpinning its claim for tortious interference are hypothetical.  Each of the purported business expectancies that Plaintiff alleges are purely speculative.  *See* MTD § IV(C)(2).  The most likely outcome of the business expectancies Plaintiff asserts a claim for is the same outcome for many of its attempted sales: the potential customer would have ultimately chosen to purchase from Medtronic or another competitor because of quality, price, or other lawful reasons.

11.     Plaintiff's tortious interference claims are barred, in whole or in part, by the privilege of competition.  The conduct Plaintiff challenges simply reflects competition on the merits, in which Medtronic has offered to sell a higher quality

product at a lower price than what Plaintiff was willing to offer. Medtronic has not employed wrongful means or created unlawful restraints in selling to its customers, and Medtronic's purpose in obtaining customers was and is to advance competition.

12.    Plaintiff's claims are barred, in whole or in part, because the alleged damages, if any, are speculative and because of the impossibility of ascertaining and allocating those alleged damages. Each of the potential sales and business expectancies that Plaintiff alleges it lost as a result of Medtronic's conduct is entirely hypothetical, and it is thus impossible to quantify damages, if any. *See* MTD § IV(A)(1). As such, Plaintiff is barred from recovering damages.

13.    Plaintiff is barred from recovery of any damages because of and to the extent of its failure to mitigate damages. Plaintiff's damages, if any, could have been avoided if Plaintiff had developed a higher quality product that customers desired, offered lower prices, or met GPOs' and customers' requests for products and pricing.

14.    Plaintiff's alleged injury, if any, is the result in whole or in part of its own actions and contributory fault. Any sales that Plaintiff has lost are the result of the lower quality of its products or unsound business strategies, among other reasons. Medtronic makes substantial investments in supporting its customers. Applied chooses not to make the same investments in its business and in supporting customers, which contributes to its inability to sell as many devices as it would like.

15.    Any injuries or damages Plaintiff may have suffered were caused solely and proximately by the acts and omissions of others. Ultimately, Plaintiff attacks the procompetitive business models of GPOs and Medtronic's customers, rather than Medtronic's conduct. *See* MTD § IV(B). Medtronic receives requests from customers and potential customers to offer prices for particular products, and Medtronic submits bids based on such requests.

16.    Plaintiff's claims are barred, in whole or in part, by Medtronic's legitimate business justifications. Medtronic's customer offers are designed to meet

the requests and needs of its customers, and the challenged conduct is in furtherance of this goal.

<b><u>RESERVATION OF CLAIMS AND DEFENSES</u></b>

Medtronic reserves the right to assert any additional claims and further defenses as may be revealed by discovery or otherwise.

<b><u>JURY TRIAL DEMAND</u></b>

Medtronic demands a trial by jury for all claims.

<b><u>CONCLUSION</u></b>

**WHEREFORE**, Medtronic prays that:

A.    Plaintiff take nothing by way of its Complaint, and that the action be dismissed with prejudice;

B.    Judgment be entered in favor of Medtronic and against Plaintiff with respect to all causes of action in the Complaint;

C.    The Court award Medtronic its attorneys' fees and all other costs reasonably incurred in defense of this action; and

D.    The Court award Medtronic such other relief as the Court may deem just and proper.

Dated: September 6, 2023          CLEARY GOTTLIEB STEEN & HAMILTON LLP


                                By: /s/ Leah Brannon
                                    Leah Brannon (*pro hac vice*)
                                    George S. Cary (State Bar No. 73858)
                                    Alan B. Freedman (*pro hac vice*)
                                    2112 Pennsylvania Ave., NW
                                    Washington, DC 20037
                                    *Attorneys for Defendant Medtronic, Inc.*