Wilkinson Stekloff LLP
Brian L. Stekloff *(pro hac vice)*
Sarah Neuman *(pro hac vice)*
Alysha Bohanon *(pro hac vice)*
bstekloff@wilkinsonstekloff.com
sneuman@wilkinsonstekloff.com
abohanon@wilkinsonstekloff.com
2001 M Street, NW
10th Floor
Washington, DC 20036
Telephone: (202) 847-4000

Keri Arnold *(pro hac vice)*
karnold@wilkinsonstekloff.com
130 W 42nd Street
24th Floor
New York, NY 10036
Telephone: (212) 294-8910

Cleary Gottlieb Steen & Hamilton LLP
Leah Brannon *(pro hac vice)*
Alan B. Freedman *(pro hac vice)*
lbrannon@cgsh.com
afreedman@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1500

*Attorneys for Defendant Medtronic, Inc.*

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APPLIED MEDICAL RESOURCES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MEDTRONIC, INC.,<br><br>Defendant. | Case No. 8:23-cv-00268-WLH-DFM<br><br>**MEMORANDUM IN SUPPORT OF MEDTRONIC'S MOTION PURSUANT TO FRCP 43(A) TO PERMIT REMOTE TESTIMONY VIA VIDEO CONFERENCING**<br><br>HON. WESLEY L. HSU<br><br>DATE: December 19, 2025<br>TIME: 3:00 p.m.<br>COURTROOM: 9B, 9th Floor<br><br>TRIAL DATE: January 20, 2026 |

## I.  **<u>INTRODUCTION</u>**

Medtronic respectfully moves for permission to present the live remote testimony of two third-party witnesses—Dr. Lindsay Arthur and Ms. Michelle Clatterbuck—via video conferencing.[1]  Federal Rule of Civil Procedure 43 gives courts discretion to allow remote testimony through contemporaneous transmission if good cause in compelling circumstances and appropriate safeguards exist.  Both witnesses—a pediatric trauma surgeon and a hospital contracting specialist—have unique testimony to offer the jury on critical issues.  In a case that turns on surgeon preference and hospital procurement practices, jurors will benefit from hearing directly from live remote witnesses on these key issues instead of listening to pre-recorded video depositions taken for purposes of discovery.  Both witnesses live on the East Coast, and both have attested to work and/or personal conflicts that prevent their travel to Los Angeles for trial.  These circumstances satisfy Rule 43, and Medtronic respectfully requests that the Court allow remote testimony.

## II.  **<u>FACTUAL BACKGROUND</u>**

### A.  Dr. Arthur

Dr. Arthur is a pediatric surgeon, currently serving as the Pediatric Trauma Medical Director at St. Luke's University Medical Center in Bethlehem, Pennsylvania.  Declaration of Dr. Lindsay Arthur ("Arthur Decl.") ¶¶ 2, 5.  Until April 2025, Dr. Arthur served as Chair of Surgery and Chair of the Operating Room Purchasing Committee at St. Peter's University Hospital in New Brunswick, New Jersey.  *Id.* ¶ 4.  Dr. Arthur is expected to explain to the jury from the perspective of a practicing surgeon how vessel sealing devices are used during surgery.  His testimony will also focus on the quality of LigaSure as compared to Voyant, and the specific problems he and his colleagues have experienced using Voyant.  He will

---

[1] Dr. Arthur was deposed during discovery in this matter on May 22, 2024. Ms. Clatterbuck was similarly deposed on June 12, 2024.

further testify, based on personal experience, about the importance of surgeon preference and device quality in hospital purchasing decisions. Dr. Arthur may also address differences between advanced bipolar devices and trocars. He is the only third-party surgeon who might testify live at trial. Medtronic anticipates that his direct examination will last no more than thirty minutes.

As a pediatric trauma surgeon, Dr. Arthur sees patients almost every day and generally performs surgery multiple days a week. *Id.* ¶ 6. Despite Dr. Arthur's full-time work schedule, he has set aside three hours on the mornings of February 2 and February 3, 2026, to testify remotely, should Medtronic's request be granted. *Id.* ¶ 8. Outside of those hours, Dr. Arthur has patient appointments and surgeries scheduled. *Id.* ¶ 9. Dr. Arthur's responsibilities to his pediatric patients do not allow him to take multiple days off of work to travel to and from Los Angeles to attend trial in person. *Id.* ¶¶ 10-11. Converting those few reserved hours into multiple days of cross-country travel would cause significant hardship and potential harm to Dr. Arthur's patients that need care and surgery in Pennsylvania. *Id.* ¶ 12.

### B. Ms. Clatterbuck

Ms. Clatterbuck is Director of Contracting for Sentara Health, a healthcare system with hospitals in Virginia and North Carolina. Declaration of Michelle Clatterbuck ("Clatterbuck Decl.") ¶ 1. She lives in Virginia Beach, Virginia. *Id.* If permitted to testify remotely, Ms. Clatterbuck would be the only live witness to testify from the perspective of a customer regularly involved in negotiating contracts with medical device companies. Specifically, Ms. Clatterbuck is expected to provide unique testimony on contracting in the medical device industry; Sentara Health's experience negotiating and working with Medtronic, Applied, and other medical device companies; the benefits of group purchasing organizations (GPOs) and other organizations that negotiate on behalf of hospitals; and the benefits of bundled discounts and other discounts offered by Medtronic and other medical device

2

companies.  As with Dr. Arthur, Medtronic anticipates that Ms. Clatterbuck's direct examination will last no more than thirty minutes.

Ms. Clatterbuck is a full-time employee with responsibilities that prevent her from making a multi-day, cross-country trip.  Because of the size and staffing of Ms. Clatterbuck's team and budgetary constraints, Sentara Health is unable to provide Ms. Clatterbuck with time off of work for travel and trial testimony.  Clatterbuck Decl. ¶ 4.  In addition to work responsibilities, Ms. Clatterbuck has childcare obligations that prevent her from traveling to give testimony.  *Id.* ¶ 5.

## III.  <u>ARGUMENT</u>

Under Federal Rule of Civil Procedure 43(a), a court may permit testimony in open court "by contemporaneous transmission from a different location" for "good cause in compelling circumstances and with appropriate safeguards."  Fed. R. Civ. P. 43(a).  Courts routinely find that geographic considerations, professional and personal obligations, and substantial costs associated with travel—especially for third-party witnesses—provide sufficient good cause and compelling circumstances to allow live remote testimony.  The facts here meet the Rule 43(a) standard.  And pre-recorded testimony from a discovery deposition is no substitute for live, remote testimony.  As other courts have recognized, "[l]ive testimony is preferable to playing a deposition video."  *See, e.g.*, *Watkins Family Trust Dated 1/7/94 v. Wallace*, 2025 WL 3171902, at *1 (N.D. Cal. 2025).

### A.  **Dr. Arthur's Circumstances Establish Good Cause to Permit Remote Testimony.**

Medtronic's request for Dr. Arthur to testify remotely via videoconferencing falls squarely within circumstances other courts have found to meet the good cause standard.  For starters, many courts have found that good cause and compelling circumstances are established where a significant geographic distance separates the witness from the trial location.  *Warner v. Cate*, 2015 WL 4645019, at *1 (E.D. Cal. 2015) (collecting cases); *Ever Win Int'l Corp. v. Prong, Inc.*, 2017 WL 1654063, at

3

*1-2 (C.D. Cal. 2017) (concluding that "East Coast residency" justified remote testimony at California trial); *Carlsson v. Barnes*, 2017 WL10378340, at *4 (C.D. Cal. 2017) (same); *see also Beltran-Tirado v. I.N.S.*, 213 F.3d 1179, 1186 (9th Cir. 2000) (concluding it was "fair" for a witness that would have had to travel from Missouri to San Diego to testify telephonically because such testimony would have been admissible in a civil court proceeding under Rule 43(a)). Dr. Arthur works in Bethlehem, Pennsylvania, more than 2,500 miles from Los Angeles. Arthur Decl. ¶ 5. He would be required to take two full days just to travel to and from trial, and possibly a third to testify for no more than an hour in total. *See id.* ¶ 10.

More importantly, Dr. Arthur is a practicing pediatric trauma surgeon who has patient care responsibilities throughout the trial. Taking the time to travel across the country to testify live at trial likely would cause both inconvenience and harm to his pediatric patients. *Id.* ¶ 12. Courts have granted similar requests to permit remote testimony of practicing third-party physicians in other cases. In *Sallenger v. City of Springfield*, the court granted the plaintiff's request to permit remote testimony of a third-party ICU physician from New Mexico, the physician's state of residence, at a trial in Illinois. 2008 WL 2705442, at *1 (C.D. Ill. 2008); *see also Katzin v. United States*, 124 Fed. Cl. 122, 125-26 (2015) (allowing remote testimony by practicing physician who would have needed to travel hundreds of miles to trial location). In fact, at least one court has permitted remote testimony for a third-party physician who was *within* the subpoena power, finding that the physician's patient-care responsibilities established good cause. *See Rock v. Cummings*, 2025 WL 1270748, at *1 (D. Ariz. 2025) (granting request for remote testimony because requiring on-call trauma surgeon to testify in person "could interfere with the operations of the trauma center where he works and imperil the health and safety of trauma patients"). Similar considerations are present here, Arthur Decl. ¶¶ 5, 8-12, and amply justify allowing Dr. Arthur to testify remotely.

### B.    Ms. Clatterbuck's Circumstances Establish Good Cause to Permit Remote Testimony.

Ms. Clatterbuck lives in Virginia Beach, Virginia and would be required to travel over 2,700 miles over the course of at least two days to testify for no more than an hour in total.  *See Carlsson*, 2017 WL10378340, at *4.  Ms. Clatterbuck's employer, Sentara Health, has indicated that she will not be afforded time off to travel for trial.  Clatterbuck Decl. ¶ 4.

Ms. Clatterbuck also faces personal circumstances that make travel from Virginia Beach to Los Angeles untenable.  She has childcare obligations to her two children without help from immediate family and cannot be away from her children for multiple days for the trial.  *Id.* ¶ 5.  The totality of Ms. Clatterbuck's circumstances here warrant testimony by videoconferencing.  *See Humbert v. O'Malley*, 303 F.R.D. 461, 464-66 (D. Md. 2014) (holding that childcare responsibilities bolstered the appropriateness of remote testimony where other compelling circumstances also justified remote testimony).

### C.    Appropriate Safeguards Exist to Permit Remote Testimony.

This Court should grant Medtronic's request as to both witnesses because appropriate safeguards exist to permit remote testimony.  Courts have previously held that "[a]ppropriate safeguards exist where the opposing party's ability to conduct cross-examination is not impaired, the witness testifies under oath in open court, and the witness's credibility can be assessed adequately." *Warner*, 2015 WL 4645019, at *1 (granting defendant's request for a witness to testify via videoconferencing).

Courts routinely hold that videoconferencing technology offers adequate safeguards under Rule 43. *Liu v. State Farm Mut. Auto. Ins. Co.*, 507 F. Supp. 3d 1262, 1265 (W.D. Wash. 2020) (videoconferencing permitted because ability to assess witness's credibility "unimpeded"); *Warner*, 2015 WL 4645019, at *1 ("[V]ideo testimony can sufficiently enable cross-examination and credibility

5

determinations, as well as preserve the overall integrity of the proceedings" because "a witness testifying by video is observed with little, if any, delay in transmission."); *Swedish Match*, 197 F.R.D. at 2 ("[T]here is no practical difference between live testimony and contemporaneous video transmission based upon my experience in presiding over two hearings."). The necessary safeguards will be in place for Dr. Arthur and Ms. Clatterbuck. Each witness would be under oath, subject to direct and cross examination, and set up with technology capable of displaying video, audio, and exhibits. This would allow jurors to evaluate knowledgeable witnesses in real time on critical topics related to surgeon preference and hospital procurement.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Medtronic's motion to permit remote testimony via videoconferencing for third-party witnesses Dr. Lindsay Arthur and Ms. Michelle Clatterbuck.

Dated:  November 21, 2025          Respectfully submitted,


By:  /s/ *Brian L. Stekloff*
Wilkinson Stekloff LLP
Brian L. Stekloff *(pro hac vice)*
Sarah Neuman *(pro hac vice)*
Alysha Bohanon *(pro hac vice)*
bstekloff@wilkinsonstekloff.com
sneuman@wilkinsonstekloff.com
abohanon@wilkinsonstekloff.com
2001 M Street, NW
10th Floor
Washington, DC 20036
Telephone: (202) 847-4000

Keri Arnold *(pro hac vice)*
karnold@wilkinsonstekloff.com
130 W 42nd Street
24th Floor
New York, NY 10036
Telephone: (212) 294-8910

6

Cleary Gottlieb Steen & Hamilton LLP
Leah Brannon *(pro hac vice)*
Alan B. Freedman *(pro hac vice)*
lbrannon@cgsh.com
afreedman@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1500

Liang Ly LLP
Jason L. Liang (SBN 251235)
John K. Ly (SBN 247477)
jliang@lianglyllp.com
jly@lianglyllp.com
601 South Figueroa Street, Suite 1950
Los Angeles, CA 90017
Telephone: (213) 262-8000

*Attorneys for Defendant Medtronic, Inc.*

**LR 11-6.2 CERTIFICATION OF WORD COUNT:** The undersigned, counsel of record for Defendant Medtronic, Inc., certifies that the foregoing memorandum of points and authorities, including headings, footnotes, and quotations but excluding the caption, the table of contents, the table of authorities, the signature block, the certification required by L.R. 11-6.2, and any indices and exhibits, contains 1,629 words, which complies with the word limit of L.R. 11-6.1.

/s/ *Brian L. Stekloff*

*Attorneys for Defendant Medtronic, Inc.*