Wilkinson Stekloff LLP
Brian L. Stekloff (*pro hac vice*)
Sarah Neuman (*pro hac vice*)
bstekloff@wilkinsonstekloff.com
sneuman@wilkinsonstekloff.com
2001 M Street, NW
10th Floor
Washington, DC 20036
Telephone: (202) 847-4000

Cleary Gottlieb Steen & Hamilton LLP
Leah Brannon (*pro hac vice*)
Alan B. Freedman (*pro hac vice*)
lbrannon@cgsh.com
afreedman@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1500

*Attorneys for Defendant Medtronic, Inc.*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| APPLIED MEDICAL RESOURCES CORPORATION,<br><br>Plaintiff,<br>v.<br><br>MEDTRONIC, INC.,<br><br>Defendant. | Case No. 8:23-cv-00268-WLH-DFM<br><br>**MEDTRONIC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>HON. WESLEY L. HSU<br><br>Complaint Filed: February 14, 2023<br>Final Pretrial Conference: December 19, 2025<br>Trial Date: January 20, 2026 |

## TABLE OF CONTENTS


INTRODUCTION ....... 1

I. APPLIED'S CLAIMS AND MEDTRONIC'S KEY EVIDENCE IN OPPOSITION ....... 1

A. Applied's Claims (L.R. 16-4.1(a)) ....... 2

1. Claim 1: Monopolization (15 U.S.C. § 2) ....... 2
2. Claim 2: Attempted Monopolization (15 U.S.C. § 2) ....... 2
3. Claim 3: Unlawful Restraint Of Trade (15 U.S.C. § 1) ....... 2
4. Claim 4: Anticompetitive Bundled Discounting (15 U.S.C. § 1) ....... 3
5. Claim 5: Exclusive Dealing (15 U.S.C. §§ 1, 14) ....... 3
6. Claim 6: Unlawful Restraint Of Trade (California Cartwright Act) ....... 4
7. Claim 7: Unlawful Interference With Prospective Economic Advantage ....... 4
8. Claim 8: Unfair Competition (Cal. Bus. & Prof. Code § 17200) ....... 5

B. Elements Required To Establish Applied's Claims (L.R. 16-4.1(b)) ....... 5

1. Claim 1: Monopolization (15 U.S.C. § 2) ....... 5
2. Claim 2: Attempted Monopolization (15 U.S.C. § 2) ....... 7
3. Claim 3: Unlawful Restraint Of Trade (15 U.S.C. § 1) ....... 8
4. Claim 4: Anticompetitive Bundled Discounting (15 U.S.C. § 1) ....... 9
5. Claim 5: Exclusive Dealing (15 U.S.C. §§ 1, 14) ....... 9
6. Claim 6: Unlawful Restraint Of Trade (California Cartwright Act) ....... 10
7. Claim 7: Unlawful Interference With Prospective Economic Advantage ....... 11
8. Claim 8: Unfair Competition (Cal. Bus. & Prof. Code § 17200) ....... 11

C. Key Evidence In Opposition To Applied's Claims (L.R. 16-4.1(c)) ....... 12

D. Anticipated Failures Of Proof ....... 14

1. Market Definition And Power ....... 14
2. Competitive Effects ....... 15
3. Antitrust Injury ....... 15

4. Causation ........ 15

5. No Underlying Violation ........ 15

6. Speculative Damages ........ 15

II. MEDTRONIC'S AFFIRMATIVE DEFENSES AND KEY EVIDENCE IN SUPPORT ........ 16

A. Medtronic's Affirmative Defenses (L.R. 16-4.1(d)) ........ 16

1. Laches ........ 16

2. Mitigation ........ 16

B. Elements Required To Establish Medtronic's Affirmative Defenses (L.R. 16-4.1(e)) ........ 17

1. Laches ........ 17

2. Mitigation ........ 17

C. Key Evidence Relied On In Support Of Medtronic's Affirmative Defenses (L.R. 16-4.1(f)) ........ 17

1. Laches ........ 17

2. Mitigation ........ 18

III. MEDTRONIC'S POSITION ON ANTICIPATED EVIDENTIARY ISSUES (L.R. 16-4.1(h)) ........ 18

IV. ISSUES OF LAW (L.R. 16-4.1(i)) ........ 19

A. Applied Must Prove Its Alleged Relevant Market To Prevail On Its Claims. ........ 19

B. The Rule Of Reason Governs Applied's Claims Under Sherman Act Sections 1 And 2 ........ 22

C. Applied Must Show That Medtronic's Contracts Were In Fact Exclusive 23

D. Applied Must Prove That Medtronic Has The Exclusive Capacity To Create The Challenged Bundled Discounts ........ 23

E. Applied Must Prove Antitrust Injury And Harm To Competition For All Of Its Claims ........ 25

V. BIFURCATION OF ISSUES (L.R. 16-4.3) ........ 26

VI. JURY TRIAL (L.R. 16-4.4) ........ 26

VII. ATTORNEYS' FEES (L.R. 16-4.5) ........ 26

VIII. ABANDONMENT OF ISSUES (L.R. 16-4.6) ........ 27

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aerotec Int'l, Inc. v. Honeywell Int'l Inc.*, 836 F.3d 1171 (9th Cir. 2016) ........ 6, 10, 23-24

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991 (9th Cir. 2010) ........ 7, 10

*Applied Med. Res. Corp. v. Ethicon, Inc.*, No. SACV 03-1329-JVS (C.D. Cal. Aug. 29, 2006) ........ 22

*Applied v. Ethicon, Inc.*, No. 8:03-cv-01329-JVS-MLG (C.D. Cal. 2006) ........ 6

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993) ........ 6

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ........ 15, 25

*Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008) ........ 6, 24

*Epic Games v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023) ........ 21

*Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974 (9th Cir. 2020) ........ *passim*

*Fount-Wip, Inc. v. Reddi-Wip, Inc.*, 568 F.2d 1296 (9th Cir. 1978) ........ 19

*In re: Nat'l Football League's "Sunday Ticket" Antitrust Litig.*, No. 2:15-ml-02668-PSG-SK (C.D. Cal June 27, 2024) ........ 22

*Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp.*,
518 F.2d 913 (9th Cir. 1975) ........................................................ 16-17

*Malaney v. UAL Corp.*,
2011 WL 6845773 (N.D. Cal. 2011), *aff'd*, 552 F. App'x 698 (9th Cir. 2014) ........................................................ 19

*O.S.C. Corp. v. Apple Comput., Inc.*,
601 F. Supp. 1274 (C.D. Cal. 1985), *aff'd*, 792 F.2d 1464 (9th Cir. 1986) ........................................................ 20

*Ohio v. Am. Express Co.*,
585 U.S. 529 (2018) ........................................................ *passim*

*Omega Env't, Inc. v. Gilbarco, Inc.*,
127 F.3d 1157 (9th Cir. 1997) ........................................................ 10

*Ralph C. Wilson Indus., Inc. v. Chron. Broad. Co.*,
794 F.2d 1359 (9th Cir. 1986) ........................................................ 20

*Rebel Oil Co. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995) ........................................................ 25

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993) ........................................................ 8

*Suture Express, Inc. v. Owens & Minor Distrib., Inc.*,
851 F.3d 1029 (10th Cir. 2017) ........................................................ 24

*Tampa Elec. Co. v. Nashville Coal Co.*,
365 U.S. 320 (1961) ........................................................ 3, 9, 20, 23

*Tevra Brands LLC v. Bayer HealthCare LLC*,
No. 5:19-cv-04312-BLF (N.D. Cal. Aug. 1, 2024) ........................................................ 22

*Total Recall Techs. v. Luckey*,
2016 WL 1070656 (N.D. Cal. 2016) ........................................................ 25

*UCAR Tech. (USA) Inc. v. Yan Li*,
2018 WL 2555429 (N.D. Cal. 2018) ........................................................ 25

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965) ....20

*ZF Meritor LLC v. Eaton Corp.*, No. 1:06-cv-00623-SLR (D. Del. Oct. 8, 2009)....22

**State Cases**

*Cel-Tech Commc'ns, Inc. v. L.A. Cel. Tel. Co.*, 20 Cal. 4th 163 (1999)....12, 20, 26

*Della Penna v. Toyota Motor Sales*, 11 Cal. 4th 376 (1995)....11, 21, 26

*Dixon Gas Club, LLC v. Safeway Inc.*, 2015 WL 4557388 (Cal. Ct. App. 2015)....20

*Drum v. San Fernando Valley Bar Ass'n.*, 182 Cal. App. 4th 247 (2010)....20

*Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 55 Cal. App. 5th 381 (2020)....4, 10, 20

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)....26

*Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279 (2020)....26

**State Statutes**

Cal. Bus. & Prof. Code § 17200 .... 5, 11-12

**Other Authorities**

3A Fed. Jury Prac. & Instructions *§ 150:136* (6th ed. 2025) ....9

ABA Model Jury Instructions in Civ. Antitrust Cases (6th ed. June 2016) ....6, 9, 16

Jud. Council of Cal. Civ. Jury Instructions (CACI) (2024) ....11

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 749 (5th ed. 2025)......................24

## INTRODUCTION

Defendant Medtronic, Inc., submits this Memorandum of Contentions of Fact and Law pursuant to Civil Local Rule 16-4 and this Court's Standing Orders. As required by Local Rule 16-4, this Memorandum summarizes Plaintiff Applied Medical Resources Corporation's claims and Medtronic's contentions and does not purport to identify every fact Medtronic may seek to establish at trial or every point of law on which Medtronic may rely. Medtronic reserves the right to amend and supplement its contentions and the evidence referenced below at trial.[1]

## I. APPLIED'S CLAIMS AND MEDTRONIC'S KEY EVIDENCE IN OPPOSITION

In its Complaint filed on February 14, 2023, Applied asserted eight causes of action against Medtronic. Applied alleged violations of Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act, claims under California's Cartwright Act and Unfair Competition Law ("UCL"), and unlawful interference with prospective economic advantage. Applied's claims are all predicated on the same alleged conduct and, as detailed below, are largely duplicative.

[1] Medtronic has revised this memorandum in light of the Court's Summary Judgment Opinion and Order. But for the reasons stated in its briefs in support of its *Daubert* Motion (Dkt. Nos. 136-1 and 150-1), Summary Judgment Motion (Dkt. Nos. 147-1, 154-1, 249-1), and Motion for Certification of Interlocutory Appeal (Dkt. Nos. 259-1, 263), its April 19, 2025 Contentions of Law and Fact (Dkt. No. 219), and its May 3, 2025 position statements regarding the Disputed Jury Instructions (Dkt. No. 244), Medtronic maintains that proof of (a) substantial foreclosure and (b) monopoly power in the devices bundled with advanced bipolar devices and used in the discount attribution analysis is necessary for Applied's bundled discounting claim.

### A. Applied's Claims (L.R. 16-4.1(a))

#### 1. Claim 1: Monopolization (15 U.S.C. § 2)[2]

Applied alleges that Medtronic has used anticompetitive bundled discounting and de facto exclusive dealing agreements to acquire or maintain monopoly power in the purported market for advanced bipolar devices ("ABDs").

Medtronic denies all aspects of this claim, including because Applied (1) has not established a relevant product market for ABDs; (2) cannot prove that Medtronic has monopoly power in that alleged market; (3) has not shown exclusionary conduct that caused harm to competition, let alone harm sufficient to substantially outweigh its procompetitive benefits under the Rule of Reason; and (4) has not established antitrust injury, causation, or damages.

#### 2. Claim 2: Attempted Monopolization (15 U.S.C. § 2)

As an alternative to its monopolization claim, Applied alleges attempted monopolization. Applied alleges that even if Medtronic has yet to achieve monopoly power in the purported ABD market, it engaged in exclusionary bundled discounting and unlawful exclusive dealing with the specific intent to achieve monopoly power and a dangerous probability of doing so.

Medtronic denies all aspects of this claim for the same reasons it denies all aspects of Applied's monopolization claim. In addition, Applied has not demonstrated that Medtronic engaged in anticompetitive conduct with the specific intent to achieve monopoly power and a dangerous probability of doing so.

#### 3. Claim 3: Unlawful Restraint Of Trade (15 U.S.C. § 1)

Applied's third claim asserts that Medtronic's bundled discounts and allegedly exclusive contracts are unlawful restraints of trade.

Medtronic denies all aspects of this claim for the same reasons it denies all

---

[2] The parties disagree regarding the order in which the claims should be presented to the jury, but to ease the Court's review of the contentions, Medtronic lists Applied's claims here in the order in which Applied covers them.

aspects of Applied's monopolization claim. Medtronic further denies this claim because Applied has not shown that Medtronic possesses market power in the alleged ABD market.

### 4. Claim 4: Anticompetitive Bundled Discounting (15 U.S.C. § 1)

In addition to challenging bundled discounting as an unreasonable restraint of trade under Section 1 of the Sherman Act, Applied challenges it as a separate cause of action under the same statute.

Bundled discounting is a type of restraint, not a separate cause of action from restraint of trade. Accordingly, this challenge is subsumed under Applied's restraint of trade claim, and Medtronic denies it for the same reasons as it denies Claim 3.

### 5. Claim 5: Exclusive Dealing (15 U.S.C. §§ 1, 14)

Similar to its approach to its claims based on bundled discounting, Applied challenges exclusive dealing twice under the same statutory section, once as a type of restraint and once as a separate cause of action. Because these are duplicative challenges, Medtronic denies Applied's claim for unlawful exclusive dealing under Section 1 of the Sherman Act for the same reasons it denies Claim 3.

Applied also challenges Medtronic's allegedly exclusive contracts under Section 3 of the Clayton Act, which prohibits exclusive dealing that substantially forecloses competition or has the probable effect of substantially foreclosing competition in a relevant market. *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961). Medtronic denies this claim for the same reasons it denies Applied's other claims, including because Applied has not demonstrated that Medtronic's contracts prevent customers from purchasing ABDs from other suppliers, which is a threshold requirement under Section 3, or that those contracts have substantially foreclosed or have the probable effect of substantially

foreclosing competition.

**6. Claim 6: Unlawful Restraint Of Trade (California Cartwright Act)**

Applied's unlawful restraint claim under California's Cartwright Act repackages its unlawful restraint claim under Section 1 of the Sherman Act. *See Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 55 Cal. App. 5th 381, 398–99 (2020) ("[T]he Cartwright Act, like its federal counterpart the Sherman Act, prohibits not all agreements restraining trade, but rather agreements that unreasonably restrain trade."). Medtronic denies this claim for the same reasons it denies Applied's other claims.

**7. Claim 7: Unlawful Interference With Prospective Economic Advantage**

Applied argues that Medtronic engaged in exclusionary bundled discounting and unlawful exclusive dealing with the intent of disrupting economic relationships that Applied might have had with certain hospitals. But for Medtronic's conduct, Applied argues, Applied would have realized economic benefits from those alleged relationships.

Medtronic denies this claim, including on the grounds that the challenged conduct is not unlawful. Medtronic further denies this claim because Applied has not proven specific instances of tortious interference. Applied has not proven, for any prospective hospital customer, that Medtronic knew of an economic relationship between Applied and the hospital, intended to disrupt that relationship through independently unlawful conduct or knew that disruption was substantially certain to occur, and harmed Applied by actually disrupting the relationship. Nor has Applied shown that its expectation of economic benefits from any hospital is based on more than mere speculation. It is not enough for Applied to allege interference in the abstract. It must specify the hospital relationships for which it

claims harm and then prove the elements of this claim for each.

**8. Claim 8: Unfair Competition (Cal. Bus. & Prof. Code § 17200)**

Applied's claim under California's Unfair Competition Law again repackages Applied's other counts. Applied alleges that Medtronic's bundled discounting and alleged exclusive dealing violated the UCL by violating the Sherman Act, Clayton Act, or Cartwright Act or otherwise harming or threatening harm to competition. Medtronic denies this claim for the same reasons it denies Applied's other claims. Further, far from being unfair, Medtronic's conduct is procompetitive and benefits consumers.

**B. Elements Required To Establish Applied's Claims (L.R. 16-4.1(b))[3]**

This section sets forth the elements Applied must prove, by a preponderance of the evidence, to prevail on each of its claims.

**1. Claim 1: Monopolization (15 U.S.C. § 2)**

To establish that Medtronic violated Section 2 of the Sherman Act by monopolizing the purported market for ABD sales in the United States, Applied must prove each of the following elements by a preponderance of the evidence:

1. the alleged advanced bipolar device market is a valid antitrust market;
2. Medtronic possessed monopoly power in that market;
3. Medtronic willfully acquired or maintained monopoly power in that market, and did so by engaging in exclusionary bundled discounting and/or unlawful exclusive dealing that resulted in a substantial adverse effect on competition not outweighed by procompetitive benefits; and
4. Applied was injured in its business or property because of Medtronic's

---

[3] For a full explanation of Medtronic's position on the elements of each claim, see Medtronic's proposed jury instructions, position statements on the disputed jury instructions, and verdict form argument.

exclusionary bundled discounting and/or unlawful exclusive dealing. *See* ABA Model Jury Instructions in Civ. Antitrust Cases, at Chapter 3.A.1 (2016 ed.) [hereinafter ABA Model Jury Instructions]; *Ohio v. Am. Express Co.*, 585 U.S. 529, 541–43 & n.7 (2018); *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 991 (9th Cir. 2020); *Applied v. Ethicon, Inc.*, 2005 WL 6567355, Dkt. No. 361 at 18 (C.D. Cal. 2006), Instruction No. 17 (including "without legitimate procompetitive reasons for engaging in such conduct" in element three); *Applied v. Ethicon, Inc.*, No. 8:03-cv-01329-JVS-MLG, Dkt. No. 296 at 11 (C.D. Cal. 2006), Applied Proposed Instruction No. 14 (same); Order re Mot. to Certify Order for Interlocutory Appeal, Dkt. No. 278 at 4 n.2. To satisfy element four of this claim, Applied must prove that the injury it allegedly suffered was antitrust injury, or injury of the type the antitrust laws were intended to prevent.

To demonstrate that Medtronic engaged in exclusionary bundled discounting, Applied must identify bundled discounts for which each of the following elements can be proven by a preponderance of the evidence:

1. Medtronic sold advanced bipolar devices in bundles with other devices for a lower price than if the devices were purchased separately;
2. Medtronic had the exclusive capacity to create the bundles at issue; and
3. for those bundles, Medtronic's advanced bipolar devices were sold below cost, meaning that the price of the advanced bipolar devices in the bundle, minus the discount on the other devices in the bundle, was less than Medtronic's average variable cost of producing the advanced bipolar devices.

*See Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 894, 895 & n.6, 896–99, 903, 906, 909, 910 n.21 (9th Cir. 2008); *Aerotec Int'l, Inc. v. Honeywell Int'l Inc.*, 836 F.3d 1171, 1175, 1185–87 (9th Cir. 2016); *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223 (1993); ABA Model Jury Instructions 2.B.2, 3.C.4, 3.C.12; *Am. Express*, 585 U.S. at 541; *Qualcomm*, 969

F.3d at 990–91; Order Re Mot. for Summ. J., Dkt. No. 256 at 4, 7–8.

To establish that Medtronic engaged in unlawful exclusive dealing, Applied must prove each of the following elements by a preponderance of the evidence:

1. There was an agreement between the buyer(s) and Medtronic that totally forecloses the buyer(s) from purchasing advanced bipolar devices from competing suppliers; and
2. the agreement was an unreasonable restraint of trade that resulted in a substantial adverse effect on competition in the alleged relevant market.

*See* ABA Model Jury Instructions 2.D.5; *Qualcomm*, 969 F.3d at 1003–04; *Allied Orthopedic Appliances Inc. v. Tyco Heath Care Group LP*, 592 F.3d 991, 997 (9th Cir. 2010); Order Re Mot. for Summ. J., Dkt. No. 256 at 9, 11.

**2. Claim 2: Attempted Monopolization (15 U.S.C. § 2)**

To establish that Medtronic violated Section 2 of the Sherman Act by attempting to monopolize the purported market for ABD sales in the United States, Applied must prove each of the following elements by a preponderance of the evidence:

1. the alleged advanced bipolar device market is a valid antitrust market;
2. Medtronic engaged in exclusionary bundled discounting and/or unlawful exclusive dealing that resulted in a substantial adverse effect on competition not outweighed by procompetitive benefits;
3. Medtronic had a specific intent to achieve monopoly power in the alleged market for advanced bipolar devices;
4. there was a dangerous probability that Medtronic would achieve its goal of monopoly power in the alleged relevant market; and
5. Applied was injured in its business or property by Medtronic's exclusionary bundled discounting and/or unlawful exclusive dealing.

*See* ABA Model Jury Instructions 3.D.1; *Am. Express*, 585 U.S. at 541–43, 543

n.7; *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993); *Qualcomm*, 969 F.3d at 974.

To satisfy element two of this claim, Applied must additionally prove the elements for exclusionary bundled discounting and/or unlawful exclusive dealing described in Section I.B.1. To satisfy element five of this claim, Applied must prove that the injury it allegedly suffered was antitrust injury.

**3. Claim 3: Unlawful Restraint Of Trade (15 U.S.C. § 1)**

To establish that Medtronic violated Section 1 of the Sherman Act by using exclusionary contracts to unlawfully restrain trade in the alleged ABD market, Applied must prove each of the following elements by a preponderance of the evidence:

1. the alleged advanced bipolar device market is a valid antitrust market;
2. Medtronic entered into exclusionary bundled discounting and/or exclusive dealing agreements for the sale of advanced bipolar devices to one or more hospital(s);
3. the agreement(s) were an unreasonable restraint of trade that resulted in a substantial adverse effect on competition in the alleged market for advanced bipolar devices that was not outweighed by procompetitive benefits;
4. Medtronic had substantial market power in the alleged market for advanced bipolar devices; and
5. Applied was injured in its business or property because of the agreement(s).

*See* ABA Model Jury Instructions 1.B, 2.D.1 & Notes; *Am. Express*, 585 U.S. at 541–43, 543 n.7; *Qualcomm*, 969 F.3d at 991.

To satisfy the second element of this claim, Applied must additionally prove the elements for exclusionary bundled discounting and/or unlawful exclusive

dealing described in Section I.B.1. To satisfy element five of this claim, Applied must prove that the injury it allegedly suffered was antitrust injury.

**4. Claim 4: Anticompetitive Bundled Discounting (15 U.S.C. § 1)**

To establish that Medtronic violated Section 1 of the Sherman Act by engaging in anticompetitive bundled discounting, Applied must prove that Medtronic engaged in exclusionary bundled discounting as described in Section I.B.1 and further prove each element described in Section I.B.3 based on such bundled discounting.

**5. Claim 5: Exclusive Dealing (15 U.S.C. §§ 1, 14)**

To establish that Medtronic violated Section 1 of the Sherman Act by engaging in anticompetitive exclusive dealing, Applied must prove that Medtronic engaged in unlawful exclusive dealing as described in Section I.B.1 and further prove each element described in Section I.B.3 based on such exclusive dealing.

To establish that Medtronic violated Section 3 of the Clayton Act, Applied must prove each of the following elements by a preponderance of the evidence:

1. the alleged advanced bipolar device market is a valid antitrust market;
2. there were exclusive dealing agreements between Medtronic and its customers that prevented the customers from purchasing advanced bipolar devices from any other supplier;
3. the exclusive dealing agreements have substantially foreclosed or have the probable effect of substantially foreclosing competition in the alleged market for advanced bipolar devices; and
4. the exclusive dealing agreements caused Applied to suffer injury to its business or property.

*See* 3A Fed. Jury Prac. & Instructions *§ 150:136* (6th ed. 2025); ABA Model Jury Instructions 2.D.1, 3.A.1; *Tampa Elec.*, 365 U.S. at 327; *Am. Express*, 585 U.S. at

541–43, 543 n.7; *Aerotec*, 836 F.3d at 1182–83; *Omega Env't, Inc. v. Gilbarco, Inc.,* 127 F.3d 1157, 1162 (9th Cir. 1997); *Allied Orthopedic*, 592 F.3d at 996. To satisfy element four of this claim, Applied must prove that the injury it allegedly suffered was antitrust injury.

**6. Claim 6: Unlawful Restraint Of Trade (California Cartwright Act)**

To establish that Medtronic violated California's Cartwright Act by using exclusionary contracts to unlawfully restrain trade in the alleged market for advanced bipolar devices, Applied must prove each of the following elements by a preponderance of the evidence:

1. the alleged advanced bipolar device market is a valid antitrust market;
2. Medtronic entered into exclusionary bundled discounting and/or unlawful exclusive dealing agreements for the sale of advanced bipolar devices to one or more hospital(s);
3. the purpose or effect of Medtronic entering these agreements was to restrain competition in the alleged market for advanced bipolar devices;
4. the anticompetitive effect of the restraint(s) outweighed any beneficial effect on competition;
5. Applied was injured; and
6. Medtronic's exclusionary bundled discounting and/or unlawful exclusive dealing was a substantial factor in causing Applied's injury.

*See* Jud. Council of Cal. Civ. Jury Instructions (CACI) No. 3405 (2025); *Flagship Theatres*, 55 Cal. App. at 413–414; *Am. Express*, 585 U.S. at 541–43, 543 n.7. To satisfy element six of this claim, Applied must prove that the injury it allegedly suffered was antitrust injury.

### 7. Claim 7: Unlawful Interference With Prospective Economic Advantage

To establish that Medtronic intentionally and unlawfully interfered with Applied's prospective economic advantage, Applied must prove each of the following elements by a preponderance of the evidence for each hospital for which it claims interference:

1. Applied and the hospital were in an economic relationship that probably would have resulted in an economic benefit to Applied;
2. Medtronic knew of the relationship;
3. Medtronic sold advanced bipolar devices as part of below-cost bundled discounts that it had the exclusive capacity to create and/or entered into exclusive dealing agreements that prevented hospitals from buying any advanced bipolar devices from competing suppliers;
4. by engaging in such conduct, Medtronic intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur;
5. the relationship was disrupted;
6. Applied was harmed; and
7. Medtronic's bundled discounting and/or exclusive dealing was a substantial factor in causing Applied's harm.

*See* CACI No. 2202; *see also Della Penna v. Toyota Motor Sales*, 11 Cal. 4th 376, 393 (1995) (plaintiff must prove that defendant "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself").

### 8. Claim 8: Unfair Competition (Cal. Bus. & Prof. Code § 17200)

To establish that Medtronic violated California's UCL by engaging in below-cost bundled discounting or exclusive dealing, Applied must prove to the Court the following elements by a preponderance of the evidence:

1. Medtronic engaged in unlawful and/or unfair business acts and/or practices;
2. Applied was harmed; and
3. Medtronic's unlawful and/or unfair conduct was a substantial factor in causing Applied's harm.

*See* Cal. Bus. & Prof. Code § 17200; *Cel-Tech Commc'ns, Inc. v. L.A. Cel. Tel. Co.*, 20 Cal. 4th 163, 186–87 (1999) ("[A]ny finding of unfairness to competitors under section 17200 [must] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition . . . . [T]he word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."). To satisfy this claim, Applied must prove that the harm it allegedly suffered was the kind of harm the antitrust laws were designed to prevent.

### C. Key Evidence In Opposition To Applied's Claims (L.R. 16-4.1(c))

Below is a brief description of Medtronic's key evidence concerning Applied's claims. Because Applied's claims are all based on the same operative facts, Medtronic's evidence in opposition is not partitioned by claim. This summary is not intended to be exhaustive. The key evidence refuting Applied's claims includes, but is not limited to:

- Evidence that Applied has not properly defined any relevant market, including its alleged market for ABD sales.
- Evidence that Medtronic competes with a variety of ABD, ultrasonic, and robotic suppliers including Johnson & Johnson, Intuitive Surgical, Olympus, Hologic, Applied Medical, Stryker, and Medline.
- Evidence of competitive entry, growth, and innovation in devices that

compete with Medtronic's ABDs.

- Evidence that Medtronic's competitors are able to compete effectively in selling ABD, ultrasonic, and robotic devices.
- Evidence that Applied's market share in ABD sales has increased.
- Evidence that Applied is an equally efficient competitor to Medtronic.
- Evidence that Medtronic's line of ABDs, including both handpieces and generators, is superior to Applied's in quality, performance, and breadth of use.
- Evidence that Medtronic's line of ABDs offers greater choice to hospitals and surgeons.
- Evidence that customers choose to purchase Medtronic's ABDs over Applied's ABDs because of surgeon preference for Medtronic's ABDs.
- Evidence that Medtronic's contracts are procompetitive and lower prices for customers.
- Evidence that Medtronic's contracts with customers are individually negotiated based on customer preferences and needs.
- Evidence that Medtronic's customers and potential customers request bundled discount contracts, including for ABDs.
- Evidence that Medtronic's contracts do not require customers to purchase products exclusively from Medtronic or to purchase devices from Medtronic at all.
- Evidence that Medtronic's contracts do not prevent customers from trialing or purchasing competing ABDs.
- Evidence that Medtronic's contracts do not foreclose or substantially foreclose the alleged market for ABDs.
- Evidence that a significant portion of Medtronic's ABD sales do not involve bundled discounts.
- Evidence that Applied has failed to compete effectively for ABD sales.

- Evidence that Applied has refused to offer discounts requested by customers or potential customers.
- Evidence that Applied has turned down potential business, including opportunities to bid to win ABD business.
- Evidence that Applied's sales practices have alienated existing and potential customers.
- Evidence that Applied's contracts with customers include similar terms to Medtronic's contracts with customers.
- Evidence that bundled and volume discounts are commonplace.
- Evidence that Applied's benchmark models do not adequately model the hypothetical world without the challenged contracts.

### D. Anticipated Failures Of Proof

In addition to presenting evidence opposing Applied's claims, Medtronic intends to argue that Applied cannot meet its burden of proof on essential elements of its claims. As with Medtronic's evidence in opposition to Applied's claims, Applied's failures of proof span its various claims. Medtronic anticipates that the following failures of proof will be relevant at trial but reserves the right to assert additional failures based on Applied's presentation of its case-in-chief:

#### 1. Market Definition And Power

Applied's expert has not properly defined, and Applied cannot prove, its alleged relevant market for advanced bipolar devices. ABDs compete against other surgical devices that cut and seal tissue, including robotic ABDs and ultrasonic devices. Because Applied has not properly defined its relevant market, or any relevant market, it cannot prove that Medtronic has market power—or monopoly power—over ABD sales.

**2. Competitive Effects**

Applied cannot show that Medtronic engaged in exclusionary conduct without legitimate business justifications or that any anticompetitive effect of the challenged conduct substantially outweighed its procompetitive effects. The procompetitive effects of Medtronic's contracting practices include allowing customers to purchase more for less, which benefits customers and patients.

**3. Antitrust Injury**

Applied did not suffer antitrust injury because the effect of the challenged conduct is to encourage competitors such as Applied to decrease their prices, compete more aggressively, and manufacture higher quality products. If Applied was harmed, its harm resulted from lawful competition, and harm flowing from lawful competition is not cognizable antitrust injury. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) ("Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.").

**4. Causation**

Applied did not suffer injury stemming from Medtronic's conduct. Any lost sales were the result of Medtronic's lawful competition, Applied's failure to vigorously compete, and/or other causes not related to the challenged conduct.

**5. No Underlying Violation**

Applied cannot prove that Medtronic engaged in unlawful conduct that would serve as the underlying violation needed to prove unlawful interference with prospective economic advantage or unlawful competition under California's UCL.

**6. Speculative Damages**

Applied is not entitled to damages because it has not provided a reasonable, non-speculative basis for calculating them. *See* ABA Model Jury Instructions 6.B.3. Applied's damages models are unreliable, including because they are based

on unreasonable inferences and do not adequately model the but-for world without the challenged conduct.

## II. MEDTRONIC'S AFFIRMATIVE DEFENSES AND KEY EVIDENCE IN SUPPORT

### A. Medtronic's Affirmative Defenses (L.R. 16-4.1(d))

Medtronic pleaded and plans to pursue the following affirmative defenses:

#### 1. Laches

Applied's claims for injunctive and declaratory relief are barred by the doctrine of laches. Laches forbids plaintiffs from sleeping on their rights. *See Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp.*, 518 F.2d 913, 927 (9th Cir. 1975) (plaintiffs may not "sleep through [perceived] antitrust violations and then sue many years later"). In the antitrust context, laches presumptively bars injunctive and declaratory relief when a claim is filed more than four years after accrual. *Id.* at 929.

Applied's claims for injunctive and declaratory relief accrued more than four years before Applied filed suit, Applied offers no excuse for its delay, and Medtronic is prejudiced by this delay. Applied cannot now belatedly seek injunctive and declaratory relief.

#### 2. Mitigation

Applied may not recover damages for any portion of its injuries that it could have avoided through the exercise of reasonable care and prudence. *See* ABA Model Jury Instructions 6.B.14. The law requires an injured party to take all reasonable steps to avoid further injury and reduce its losses. *Id.* Applied did not take all reasonable steps to avoid further injury: it did not compete vigorously by developing a higher quality product, offering lower prices, seizing opportunities to win new customers, or meeting customers' requests for products and pricing. Applied is barred from recovering damages that it made no attempt to mitigate.

### B. Elements Required To Establish Medtronic's Affirmative Defenses (L.R. 16-4.1(e))

#### 1. Laches

To establish its laches defense, Medtronic must prove the following elements by a preponderance of the evidence:

1. lack of diligence by Applied in bringing suit against Medtronic; and
2. prejudice to Medtronic caused by Applied's delay.

*See Int'l Tel. & Tel. Corp.*, 518 F.2d at 926–27 ("Without the equitable doctrine of laches, a plaintiff under § 16 could seriously interfere with a rival's business operations . . . The potential for economic disruption is so great that . . . injunction-seeking plaintiffs [must] act with reasonable promptness unless excused by equitable considerations."); *Id.* at 926 ("[T]he bare fact of delay creates a rebuttable presumption of prejudice.").

#### 2. Mitigation

To establish that Applied failed to mitigate its damages, Medtronic must prove by a preponderance of the evidence that:

1. Applied acted unreasonably in failing to take specific steps to minimize or limit its losses;
2. the failure to take those specific steps resulted in Applied's losses being greater than they would have been had it taken such steps;
3. the amount by which Applied's loss would have been reduced had Applied taken those steps.

*See* ABA Model Jury Instructions 6.B.14.

### C. Key Evidence Relied On In Support Of Medtronic's Affirmative Defenses (L.R. 16-4.1(f))

#### 1. Laches

The key evidence supporting Medtronic's laches defense includes, but is not limited to:

- Evidence that Applied launched its first ABD in 2015.
- Evidence that at the time Applied launched its ABD, Applied was aware that Medtronic offered bundled, volume, and/or loyalty discounts and believed it was being injured by such conduct.
- Evidence that Applied complained to the U.S. Department of Justice regarding the challenged conduct no later than 2017.
- Evidence that Applied could have brought this suit well before it did.
- Evidence that Medtronic was prejudiced by Applied's delay in bringing this suit including by negotiating and entering contracts with customers that are challenged in the present suit.

**2. Mitigation**

The key evidence supporting Medtronic's mitigation defense includes, but is not limited to:

- Evidence that Applied maintained high margins while refusing to offer discounts requested by customers or potential customers.
- Evidence that Applied declined to take advantage of marketing and sales opportunities for its ABDs and turned down business from potential customers.
- Evidence that Applied has failed to compete effectively for ABD sales, including by improving its ABDs or expanding its ABD offerings.

## III. MEDTRONIC'S POSITION ON ANTICIPATED EVIDENTIARY ISSUES (L.R. 16-4.1(h))

The following evidentiary issues have been raised to date. Further evidentiary issues will likely arise.

***First***, the parties have filed motions *in limine* raising various evidentiary issues. Medtronic's positions on these issues are set forth in Medtronic's motions *in limine* and its oppositions to Applied's motions *in limine*.

***Second***, Applied has moved to quash Medtronic's trial subpoena of Dennis Grosshans. Medtronic's position on this issue will be explained in its forthcoming opposition to Applied's motion.

***Third***, Medtronic has moved the Court to permit two third-party witnesses to testify remotely. Medtronic's position on this issue is set forth in its brief in support of this motion.

***Fourth***, the parties have also disclosed exhibit lists. In contrast to Medtronic's list of roughly 650 exhibits, Applied's exhibit list contains more than 2,000 exhibits, the majority of which have never been used in a deposition. The sheer volume of exhibits Applied disclosed could lead to evidentiary disputes because it will be difficult for the parties to meaningfully engage on evidentiary issues related to individual exhibits.

## IV. ISSUES OF LAW (L.R. 16-4.1(i))

### A. Applied Must Prove Its Alleged Relevant Market To Prevail On Its Claims

It is Applied's burden to prove its alleged market. *See, e.g.*, *Am. Express*, 585 U.S. at 543 & n.7 (requiring plaintiffs to define a relevant market in order to prove allegations of harm from vertical restraints); *Fount-Wip, Inc. v. Reddi-Wip, Inc.*, 568 F.2d 1296, 1302 (9th Cir. 1978) (affirming judgment notwithstanding the verdict because plaintiffs "failed to bear their burden of proof in establishing the relevant market"); *Malaney v. UAL Corp.*, 2011 WL 6845773, at *4–5 (N.D. Cal. 2011) (dismissing case where no jury could find liability based on the plaintiff's alleged market), *aff'd*, 552 F. App'x 698 (9th Cir. 2014). And Applied must prove its relevant market for all of its claims.

As a general matter, proving harm to competition from vertical restraints requires proof of a properly defined relevant market. Without a properly defined market, there is no way to prove the necessary level of market power. *See, e.g.*, *Am. Express*, 585 U.S. at 543 & n.7 ("Vertical restraints often pose no risk to

competition unless the entity imposing them has market power, which cannot be evaluated unless the Court first defines the relevant market."); *O.S.C. Corp. v. Apple Computer, Inc.*, 601 F. Supp. 1274, 1292 n.8 (C.D. Cal. 1985), *aff'd*, 792 F.2d 1464 (9th Cir. 1986) ("Absent significant market power, a vertical restriction is reasonable as a matter of law."). There is also no way to measure net anticompetitive effect. *Ralph C. Wilson Indus., Inc. v. Chron. Broad. Co.*, 794 F.2d 1359, 1363 (9th Cir. 1986) (Sherman Act § 1 case explaining that "[t]o determine whether competition has been harmed, the relevant market must be defined."); *see also Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965) (Sherman Act § 2 case explaining that "[w]ithout a definition of [the relevant] market there is no way to measure [defendant's] ability to lessen or destroy competition"); *Tampa Elec.*, 365 U.S. at 327 (Clayton Act § 3 case explaining that "the threatened foreclosure of competition must be in relation to the market affected"); *Flagship Theatres*, 55 Cal. App. at 413–14 (Cartwright Act case noting that without "establish[ing] the boundaries of the market in which the plaintiff maintains the defendant harmed competition . . . the finder of fact will not know where to look in assessing anticompetitive and procompetitive effects of a practice").

Applied's UCL and tort claims are no exception. To succeed on its UCL claim, Applied must "introduc[e] evidence relating to the relevant market structure and the challenged conduct's effects or potential effects on this market structure." *Dixon Gas Club, LLC v. Safeway Inc.*, 2015 WL 4557388, at *6 (Cal. Ct. App. 2015); *see also Cel-Tech Commc'ns*, 20 Cal. 4th at 187 (defining "unfair" conduct as conduct that "significantly threatens or harms competition"); *Drum v. San Fernando Valley Bar Ass'n.*, 182 Cal. App. 4th 247, 255–56 (2010) (considering allegations of harm to relevant market as relevant to UCL claim). To succeed on its tort claim, Applied must prove that the interfering conduct is unlawful under one of Applied's other claims, each of which require that Applied successfully

establish its alleged relevant market. *Della Penna*, 11 Cal. 4th at 393 ("[A] plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.").

Applied argues that it "can prevail on its claims if it shows Medtronic has the requisite power in alternative markets defined more broadly." Joint Verdict Form Filing, Dkt. No. 242 at 6. Applied points to *Epic Games v. Apple, Inc.*, 67 F.4th 946, 981 (9th Cir. 2023) for support, but it overreads that case. *Epic Games* was decided by the court, not the jury, and neither party there appears to have contested the court's power to determine the market *sua sponte*. 67 F.4th 946, 981 (9th Cir. 2023) (affirming the district court's "middle-ground market" where the appellant argued only that the court had defined the wrong market, without challenging its ability to do so *sua sponte*).

Here, Applied must prove the relevant market that it has championed throughout this litigation: "advanced bipolar devices." *See, e.g.*, Compl. ¶¶ 2, 31, 39, Dkt. No. 1 ("The relevant product market is the advanced bipolar device market."); Opp. to Mot. to Dismiss at 4, Dkt. No. 25 ("Medtronic engages in anticompetitive conduct . . . in the market for advanced bipolar devices."); Joint Summ. J. Br. at 4–5 (Applied's introduction referring to "the ABD market" and "the relevant ABD market"). Indeed, Applied has specifically and repeatedly *disclaimed* alternative markets. *See, e.g.*, Compl. ¶ 39 ("There is no other product that serves as a reasonably interchangeable substitute for advanced bipolar devices."); Orszag Rpt. ¶ 9 ("The evidence indicates that other surgical devices . . . are not close substitutes for advanced bipolar devices and are in separate relevant product markets."); Pl. Contentions of Fact and L., Dkt. No. 281 at 6. ("Applied's expert opinion and analysis, and Medtronic documents and testimony, will demonstrate that the market for ABDs does not include ultrasonic and robotic devices.").

Courts in this Circuit routinely instruct the jury to find whether a plaintiff has proven its particular alleged market. *See, e.g.*, Verdict Form at 1, *In re: Nat'l Football League's "Sunday Ticket" Antitrust Litig.*, No. 2:15-ml-02668-PSG-SK (C.D. Cal June 27, 2024), Dkt. No. 1481 (asking the jury, post-*Epic Games*, to first answer whether plaintiff had proven the relevant market "for professional football telecasts in the United States" and, if not, to conclude deliberations); Verdict Form at 1, *Tevra Brands LLC v. Bayer HealthCare LLC*, No. 5:19-cv-04312-BLF (N.D. Cal. Aug. 1, 2024), Dkt. No. 487-1 (same, also post-*Epic Games*, for the alleged market for "topical imidacloprid flea and tick products for dogs and cats in the United States"); Verdict Form at 2, *ZF Meritor LLC v. Eaton Corp.*, No. 1:06-cv-00623-SLR (D. Del. Oct. 8, 2009), Dkt. No. 217 (same, for the alleged geographic market); Verdict Form at 3, *Applied Med. Res. Corp. v. Ethicon, Inc.*, No. SACV 03-1329-JVS (C.D. Cal. Aug. 29, 2006), Dkt. No. 351 (requiring jury to find, e.g., monopoly power "in the market for disposable trocars," the market Applied alleged in that case).

### B. The Rule Of Reason Governs Applied's Claims Under Sherman Act Sections 1 And 2

Regardless of whether Applied frames its claims as falling under Section 1 or Section 2 of the Sherman Act, the Rule of Reason applies. *Qualcomm*, 969 F.3d at 991 ("Regardless of whether the alleged antitrust violation involves concerted anticompetitive conduct under § 1 or independent anticompetitive conduct under § 2, the three-part burden-shifting test under the rule of reason is essentially the same."); *see also* Order re Mot. to Certify Order for Interlocutory Appeal, Dkt. No. 278 at 4 n.2 ("Medtronic's own proposed jury instructions provide a helpful multi-step analysis for the jury to evaluate whether Medtronic's bundled discount[s] are anticompetitive. *If* the jury does find exclusionary bundling to exist, they are still required to apply the Rule of Reason to determine whether the challenged conduct results in substantial harm to competition in the relevant market *and* whether such

conduct produces countervailing competitive benefits." (emphasis in original)). Under the Rule of Reason, the jury must first consider whether Applied has demonstrated substantial harm to competition in its claimed market, next consider whether the challenged conduct results in competitive benefits and was reasonably necessary to achieve those benefits, and finally decide whether the harm to competition substantially outweighs the procompetitive benefits. ABA Model Instructions 1.C.2, 1.C.3, 1.C.4.

### C. Applied Must Show That Medtronic's Contracts Were In Fact Exclusive

A contract between a supplier and a customer can support an exclusive dealing claim only if it prevents a buyer from purchasing a particular product from any other supplier. *See, e.g.*, *Tampa Elec.*, 365 U.S. at 327 (agreements are exclusive only "if their practical effect is to prevent lessees or purchasers from using or dealing in the goods, etc., of a competitor or competitors of the lessor or seller"); *Qualcomm*, 969 F.3d at 1003–04 ("[A]greements that provide substantial discounts to customers that actually purchase a high percentage of their requirements from a firm are not exclusive dealing arrangements, de facto or actual, unless they prevent the buyer from purchasing a given good from any other vendor." (cleaned up)). Even though Applied's claims are premised on de facto instead of explicit exclusive dealing, Applied is not relieved of its burden to prove that the agreements were actually exclusive. *See Aerotec*, 836 F.3d at 1181 ("A prerequisite to any exclusive dealing claim is an agreement to deal exclusively" (citation omitted)).

### D. Applied Must Prove That Medtronic Has The Exclusive Capacity To Create The Challenged Bundled Discounts

To prove that Medtronic's bundled discounts are anticompetitive, Applied must prove that Medtronic has the exclusive capacity to create the challenged

bundles. Order re Mot. Summ. J., Dkt. No. 256 at 7 ("So long as Applied has raised a triable issue of fact that Medtronic 'has exclusive capacity' to create the bundles at issue, a trier of fact can use the DAT to determine if the bundles are anti-competitive" (quoting *Aerotec*, 836 F.3d at 1187)); *id.* at 8 (requiring finding of "a monopoly on portfolio breadth" before the fact finder can "apply the DAT and determine if Medtronic's bundling practices are anticompetitive").

As other courts have observed, if competitors "offer[] similar bundling packages, competition [is] not excluded," instead taking the form of "bundle-to-bundle competition." *Suture Express, Inc. v. Owens & Minor Distrib., Inc.*, 851 F.3d 1029, 1041 (10th Cir. 2017) (affirming summary judgment for defendant on challenge to bundled discounts); *see also Aerotec*, 836 F.3d at 1187 (possibility of anticompetitive effects based on "fact that the bundling competitor has exclusive capacity to 'bundle' multiple products"). If even one other significant firm offers the package the defendant is discounting—or if a group of firms could collaborate to offer it—then there is no liability. Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 749 (5th ed. 2025) ("[W]e ask in a case involving bundled discounts not whether the plaintiff could match the bundle, but if any firm or group of firms in the market could do so, or is likely to do so. That question is answered against liability if the market contains at least one other significant firm who offers the same package that the defendant is discounting.").

As with the discount attribution test, whether Medtronic has the exclusive capacity to create a bundle must be evaluated for each bundle at issue. *See PeaceHealth*, 515 F.3d at 906 & n.15 (describing how discount attribution test is applied to an individual bundle); *Aerotec*, 836 F.3d at 1187 (holding that the discount attribution test does not apply if a competitor can produce the "same bundle").

### E. Applied Must Prove Antitrust Injury And Harm To Competition For All Of Its Claims

Applied must prove antitrust injury and harm to competition for each of its claims. Antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp.*, 429 U.S. at 489. To prove antitrust injury, Applied must also prove harm to competition. *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) ("To show antitrust injury, a plaintiff must prove that his loss flows from an anticompetitive aspect or effect of the defendant's behavior, since it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition."); Transcript of Hearing on Defendant's Mot. to Certify Order for Interlocutory App., Dkt. No. 259 at 14 (Applied's counsel noting that "this Court's summary judgment order separately addressed antitrust injury, where *harm to competition has to be shown*" (emphasis added)). Applied concedes that antitrust injury—and thus harm to competition—is required for its Sherman Act, Clayton Act, and Cartwright Act claims. It contests the point for its UCL and unlawful interference claims. *See, e.g.*, Joint Verdict Form Filing, Dkt. No. 242 at 7. Applied is incorrect.

Courts interpreting the UCL have held that antitrust injury and harm to competition are required. *See UCAR Tech. (USA) Inc. v. Yan Li*, 2018 WL 2555429, at *7 (N.D. Cal. 2018) ("[Plaintiff] has not alleged an antitrust injury . . . On this basis alone, the 'unfair' competition claim is subject to dismissal."); *Total Recall Techs. v. Luckey*, 2016 WL 1070656, at *5 (N.D. Cal. 2016) (denying leave to amend complaint alleging unfair competition because "[n]othing about [plaintiff's] theory constitutes a harm to *competition*"). These findings are consistent with the California Supreme Court's holding that "any finding of unfairness to competitors under [the UCL must] be tethered to some legislatively declared policy or proof of some actual or threatened *impact on*

*competition*." *Cel-Tech Commc'ns*, 20 Cal. 4th at 186–87 (emphasis added).

As for unlawful interference, Applied must prove that Medtronic "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna* 11 Cal. 4th at 393. This means that, to prevail on unlawful interference, Applied must prevail on another claim. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158–59 (2003) (holding that a claim of interference with prospective economic advantage requires proof that the interference "amounts to independently actionable conduct"). Because antitrust injury is an element of each such claim, Applied cannot prevail on unlawful interference without first proving antitrust injury.

## V. BIFURCATION OF ISSUES (L.R. 16-4.3)

Medtronic does not request formal bifurcation but submits that the legal and equitable issues in this case must be decided separately. Accordingly, Medtronic reserves the right to object at trial to the extent Applied seeks to introduce evidence or argument that relates solely to the equitable issues to be decided by the Court.

## VI. JURY TRIAL (L.R. 16-4.4)

The trial is to be a jury trial of Applied's legal claims. *See* Compl., Dkt. No. 1 at 1; Am. Answer to Compl., Dkt. No. 50 at 22. Applied's UCL claim and request for injunctive and declaratory relief, as well as Medtronic's laches defense, are equitable in nature and not triable to a jury. Nor is it appropriate to submit Applied's UCL claim to the jury in an advisory capacity. Whether conduct is "unfair" under the UCL is a standard "too indeterminate to be adequately conveyed by jury instructions or applied by a jury" and therefore "may reasonably be applied only by a court." *See Nationwide Biweekly Admin., Inc. v. Superior Ct. of Alameda Cnty.*, 9 Cal. 5th 279, 302 (2020).

## VII. ATTORNEYS' FEES (L.R. 16-4.5)

Medtronic understands that Applied is seeking attorneys' fees. *See* Compl.,

Dkt. No. 1 at 64. Medtronic is not seeking attorneys' fees but reserves the right to seek costs.

**VIII. ABANDONMENT OF ISSUES (L.R. 16-4.6)**

Medtronic does not currently anticipate asserting the following defenses but reserves the right to assert them if Applied's case-in-chief warrants: Applied's alleged injury, if any, is the result in whole or in part of its own actions and contributory fault; any injuries or damages Applied might have suffered were caused solely and proximately by the acts and omissions of others; Applied's tortious interference claim is barred, in whole or in part, by the privilege of competition; and Applied's request for damages is barred in part by the statute of limitations.

Dated: November 21, 2025

Respectfully submitted,

By: */s/ Brian L. Stekloff*

Wilkinson Stekloff LLP
Brian L. Stekloff (*pro hac vice*)
Sarah Neuman (*pro hac vice*)
Alysha Bohanon (*pro hac vice*)
bstekloff@wilkinsonstekloff.com
sneuman@wilkinsonstekloff.com
abohanon@wilkinsonstekloff.com
2001 M Street, NW
10th Floor
Washington, DC 20036
Telephone: (202) 847-4000

Wilkinson Stekloff LLP
Keri Arnold (*pro hac vice*)
130 W 42nd Street, 24th Floor
New York, NY 10036
Telephone: (212) 294-8910
karnold@wilkinsonstekloff.com

Cleary Gottlieb Steen & Hamilton LLP
Leah Brannon (*pro hac vice*)
Alan B. Freedman (*pro hac vice*)
lbrannon@cgsh.com
afreedman@cgsh.com

2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1500

Liang Ly LLP
Jason L. Liang (SBN 251235)
John K. Ly (SBN 247477)
jliang@lianglyllp.com
jly@lianglyllp.com
601 South Figueroa Street, Suite 1950
Los Angeles, CA 90017
Telephone: (213) 262-8000

*Attorneys for Defendant Medtronic, Inc.*