Stephen C. Jensen (SBN 149894)
steve.jensen@knobbe.com
Joseph R. Re (SBN 134479)
Joe.re@knobbe.com
Joseph F. Jennings (SBN 145920)
Joe.jennings@knobbe.com
Stephen W. Larson (SBN 240844)
stephen.larson@knobbe.com
Cheryl T. Burgess (SBN 250101)
Cheryl.burgess@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street
Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Adam B. Powell (SBN 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Phone: (858) 707-4000
Facsimile: (858) 707-4001

Attorneys for Plaintiff,
APPLIED MEDICAL RESOURCES CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| APPLIED MEDICAL RESOURCES CORPORATION, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>MEDTRONIC, INC., a Minnesota corporation,<br><br>Defendant. | Case No. 8:23-cv-00268-WLH-DFM<br><br>**APPLIED MEDICAL RESOURCE CORPORATION'S BENCH MEMO RE: ADMISSIBILITY OF CUSTOMER STATEMENTS**<br><br>Trial: January 20, 2026<br><br>Hon. Wesley S. Hsu |

## I. INTRODUCTION

Medtronic improperly raised its hearsay objection for the first time in its trial brief, rather than at the 40-day meeting as required by the Local Rules. L.R. 16-2.6. Medtronic's trial brief also circumvents this Court's Order against filing more than five motions in limine. Dkt. 47 (Civil Pretrial Schedule and Trial Order) at 8. Because it may be helpful to resolve Medtronic's hearsay objection before opening statements, however, Applied hereby responds to the portion of Medtronic's trial brief raising the objection.

Medtronic argues that statements made by customers concerning the reasons customers gave them for buying Medtronic's advanced bipolar devices ("ABDs") rather than Applied's are inadmissible as hearsay. That contradicts clear legal authority. Such statements are classic state-of-mind statements under Fed. R. Evid. 803(3). They also are not hearsay at all when offered for the effect on the listener and not for the truth of the matter asserted. Fed. R. Evid. 801(c)(2). Thus, the statements are admissible under either rule.

Specifically, such statements are "not excluded by the rule against hearsay" because they are directed to the "declarant's then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3). "Rule 803(3) … permits evidence of customer motives in antitrust cases." *U.S. Info. Sys., Inc. v. Int'l Bhd. Of Elec. Workers Local Union Number 3*, 2006 WL 2136249 (S.D.N.Y. Aug. 1, 2006). These customer statements show the customers' state of mind or motives in making their purchasing decisions. Customers' states of mind show the practical effect of Medtronic's agreements. Courts have repeatedly held that such customer statements are admissible, particularly in antitrust cases under Rule 803(3). Moreover, abundant evidence beyond the customers' statements confirms their reliability.

Additionally, such statements made to Applied are admissible for the effect on Applied as the listener. Fed. R. Evid. 801(c)(2). The statements show what

Applied learned about market conditions and customer concerns. They also inform Applied's contemporaneous business response, including mitigation efforts and the reasonableness of those efforts. Courts routinely allow such customer statements. Indeed, customers' statements are foundational to Applied's subsequent efforts to combat Medtronic's anticompetitive bundle, including by bringing this case to open the market.

Medtronic argues that these statements "would come in ***solely*** for the truth of the matter asserted." Dkt. 315-1 ("Br.") at 8 (emphasis added). That misses the relevant issue and is also incorrect. Applied will offer these customer statements for the purposes recognized in antitrust cases, such as to show the customers' then-existing motive and/or state of mind in making purchasing decisions. Applied will not offer these statements to prove that any underlying threats, penalties, or contractual interpretations were actually true. Nor will Applied use these statements to prove the fact of lost sales. Medtronic ignores Rule 803(3) as well as how these statements affected Applied's actions. Moreover, Medtronic itself has designated several customer statements from deposition testimony to use in its affirmative case. Medtronic cannot reasonably argue that the Court should exclude Applied's customer statements but permit Medtronic to use similar statements.

The Court should admit customer statements that show the customers' reasons for purchasing ABDs from Medtronic instead of from Applied under either Fed. R. Evid. 803(3) or 801.

## II. ARGUMENT

### A. Customer Statements Are Admissible To Show Customers' Motives Behind Purchasing From Medtronic

#### 1. Courts Routinely Admit Customer Statements Showing Motive

"A statement of the declarant's then-existing state of mind (such as motive, intent, or plan)" is "not excluded by the rule against hearsay, regardless of

whether the declarant is available as a witness." Fed. R. Evid. 803(3). The Supreme Court has recognized that, in an antitrust case, "[t]he reasons given by customers for ceasing to deal with" a supplier are admissible as a then-existing motive of the customer. *Lawlor v. Loewe*, 235 U.S. 522, 536 (1915) (citing 3 Wigmore, Ev. § 1729 (2));[1] *see also Consol. Credit Agency v. Equifax, Inc.*, 2005 WL 6218038, at *2 (C.D. Cal. Jan. 26, 2005) ("statements from customers regarding their reasons for not dealing with a supplier are admissible [under Rule 803(3)] for the limited purpose of proving customer motive . . . in antitrust cases"); *U.S. Info. Sys.*, 2006 WL 2136249 ("Rule 803(3) … permits evidence of customer motives in antitrust cases").

Courts routinely admit customer statements in antitrust cases to show a customer's reasons for not dealing with a supplier. *See, e.g.*, *U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*, 2019 WL 8504725, at *2 (C.D. Cal. Aug. 7, 2019) (admitting "testimony from Plaintiffs' witnesses regarding hearsay statements made by customers regarding whether and why the customers bought" from a supplier); *Complete Ent. Res. LLC v. Live Nation Ent., Inc.*, 2017 WL 11682916, at *3 (C.D. Cal. Oct. 25, 2017) (admitting customer statements "about why they chose not to use [plaintiff's services] or chose to stop using [plaintiff's services]" to show customer motive); *Mathew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 11432038, at *3 (N.D. Cal. Sept. 21, 2016) (admitting "customers' unsworn out-of-court statements" "to show what customers did and why"); *Hydrolevel Corp. v. Am. Soc. of Mech. Eng'rs, Inc.*, 635 F.2d 118, 128 (2d Cir. 1980) (affirming admission of "conversations with potential … customers" to show the customers' "reasons for not dealing with a

---

[1] The Supreme Court relied on a section of Wigmore that states: "A declaration of a present existing *motive* or *reason* for action is admissible—assuming, of course, that the declarant's motive is relevant." *Duren v. E.I. DuPont De Nemours & Co.*, 2011 WL 13234053, at *5 (E.D. Ark. June 9, 2011) (quoting same sentence in Wigmore).

-3-

supplier"); *Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC*, 2019 WL 1451105, at *4 (D.N.J. Apr. 2, 2019) (admitting testimony containing numerous customer statements such as "[t]he customer indicated to us that our pricing was not in line").

Indeed, the Third Circuit reversed a district court for excluding such statements on summary judgment, holding that such statements are admissible when offered to show a customer's motive for not buying from plaintiff. *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 252 (3d Cir. 1999); *see also J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1535 n.11 (3d Cir. 1990) (finding district court erred in excluding customer statements in an antitrust case).

Courts also regularly admit such customer statements in other types of cases. *See, e.g.*, *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191, 204–05 (2d Cir. 2015) (in unfair competition case, rejecting exclusion of customer statements why they canceled purchases from plaintiff); *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011) (in trademark infringement case, affirming admission of customer statements that they were confused as to source of goods).

Lastly, customer statements may be admitted if they are offered to show how they informed or affected the listener. In that case, the statements are not offered for the truth and thus are not hearsay at all. Fed. R. Evid. 801(c)(2).

**2. The Customer Statements Are Classic Statements Of Motive**

Applied intends to present customer statements about why the customers decided not to buy ABDs from Applied but felt they had to buy them from Medtronic. These statements reveal that the customers were not deciding because they thought Medtronic offered a better quality device or a better line-item price than Applied. Instead, these customers believed that Medtronic's bundled contracts—which Applied will show to be anticompetitive—made it infeasible to purchase from Applied. Such testimony is important and relevant to show the

motives of the customers and establish the practical effect of Medtronic's agreements. *Simon and Simon PC v. Align Tech., Inc.*, 533 F. Supp. 3d 904, 916 (N.D. Cal. Apr. 8, 2021) ("a monopolist can violate section 2 by entering arrangements that have the 'practical effect' of preventing buyers from doing business with the monopolist's competitors.").

The parties will separately debate whether customers were precluded as a technical matter by the specific terms of Medtronic's agreements. Applied's expert will also separately show how the economics of Medtronic's bundles made it financially impossible for hospitals to switch to Applied.

Medtronic asserts, without explanation, that these customer statements are inadmissible hearsay because they "would come in ***solely*** for the truth of the matter asserted" and have "***no plausible*** non-hearsay purpose." Br. at 8 (emphases added). Medtronic's bald conclusion is incorrect. These statements fall within the state-of-mind hearsay exception. Fed. R. Evid. 803(3). Applied offers these statements to show the ***reasons*** why these customers contracted with Medtronic instead of Applied, which are "relevant in a lost profits/sales inquiry." *L.A. Int'l Corp. v. Prestige Brands Holdings, Inc.*, 2023 WL 8896249, at *4 (C.D. Cal. Nov. 14, 2023) (citing *J.F. Feeser*, 909 F.2d at 1535 n.11 ("reason why a customer was not doing business with a particular seller is relevant in a lost profits/sales inquiry and its causal connection to the pricing practices of the alleged violator.")). This is classic state-of-mind testimony.

**B.**     **Customer Statements Are Also Admissible For Effect On The Listener**

Hearsay is defined as an out-of-court statement "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). Customer statements to Applied are admissible for the non-hearsay purpose of showing the effect on the listener. *See Curtis Lumber Co. v. Louisiana Pac. Corp.*, 618 F.3d 762, 782–83 n. 18 (8th Cir. 2010) ("the customers' statements are offered to show the effect of the out-of-court statements on the listener … and thus, they are not hearsay").

These statements inform Applied about the marketplace and buttress why Applied brought this litigation. These statements are also foundational to Applied's great efforts to combat Medtronic's bundle. Those efforts rebut Medtronic's duty-to-mitigate defense.

Thus, Medtronic's categorical assertion that these types of statements have "***no plausible*** non-hearsay purpose" is baseless.

### C. Applied Will Introduce Independent Evidence Of The Preclusive Effect Of Medtronic's Contracts

Medtronic attacks the reliability of Applied's proffered customer statements in a footnote. Br. at 8 n.6. Medtronic's criticism is misplaced. First, the Central District has rejected similar reliability-based objections to statements of customer motive when statements are corroborated. *See L.A. Int'l Corp.*, 2023 WL 8896249, at *3. The Central District held that such statements go to the weight of the evidence for the trier of fact, not admissibility. *See id.*

Second, Applied's corroborative evidence confirms the reliability of its customers' statements. Applied will introduce abundant evidence showing the effect of Medtronic's anticompetitive conduct and corroborating the customers' statements. For example, Applied will introduce evidence of the sales Applied lost to Medtronic from Applied witnesses and its expert who analyzed Medtronic contracts and explains why they foreclosed Applied from competing. *See Callahan*, 182 F.3d at 253 (allowing customer statements of motive when plaintiff independently established lost sales through testimony of plaintiff's employees that certain customers "no longer" purchased from plaintiff); *Marjam Supply Co.*, 2019 WL 1451105, at *4 (permitting customer statements of motive when plaintiff independently established lost sales through expert's analysis, showing plaintiff's sales to "major customers" decreased while defendant's sales to these customers increased). Further, Applied does not receive such statements from its European customers, where bundling is far less prevalent.

Therefore, Medtronic's reliability-based objections lack merit because they go to weight of the evidence not admissibility and Applied will introduce independent evidence as to the truth of the matter asserted in the statements.

### D. Medtronic's Objections To Specific Deposition Testimony From Witnesses Who Are Testifying Live Are Meritless

Medtronic cites an excerpt from Mr. Johnson's deposition, where he lists the hospitals who told him they could not buy from Applied because of their contracts with Medtronic. Br. at 7–8. Medtronic also cites an excerpt from Mr. McLaughlin about a customer who could not contract with Applied because of a Medtronic contract. Br. at 6–7 (citing Dkt. No. 315 (Ex. A)).

Medtronic elicited the testimony and the witnesses answered the questions posed to them. But any objection to the deposition testimony is irrelevant because Applied is calling both witnesses to testify live. Dkt. 316 at 1–2.

Regardless, neither example would comprise inadmissible hearsay. Both of these answers are quintessential examples of testimony that shows the declarants' (hospitals') state of mind and are admissible to show their motives. *Supra* § II.A. Alternatively, these hospital statements to Applied could be admissible for the effect on Applied as the listener. *Supra* § II.B. These statements are also consistent with other evidence presented by Applied and its expert, including scores of other customer statements. *Supra* § II.C.

Medtronic's claim that Mr. McLaughlin's testimony amounts to "double hearsay" is also incorrect for the same reasons. Br. at 6–7. Both parts of Mr. McLaughlin's statement are admissible for the reasons shown above. Fed. R. Evid. 805. Statements about a customer's (a specific GPO's or hospital's) motive are admissible because they go to the customer's state-of-mind or motive. Any subsequent statements to Applied about those motives are admissible for the

effect on Applied as the listener.[2]

Accordingly, Medtronic's hearsay objection is without merit.

### E. Medtronic Also Relies On Customer Statements

In addition to being meritless, Medtronic's hearsay objection is inconsistent with its own proffered testimony. Medtronic has also affirmatively designated deposition testimony, including out-of-court customer statements. For example, Medtronic designated deposition testimony from a former Applied employee, Molly Lehman, to play during its case-in-chief. She was asked about emails written by a representative of CommonSpirit, a GPO, to Applied, stating:

> "I can only speak for the Omaha market, but the local surgeons I" supported – "I support have pointed out that LigaSure has far less thermal spread but also faster heating than Voyant, so the level of interest communicated to me is quite low at the moment.

Re Decl. (Ex. A) at 202:20–203:4.

> Whatever place the Voyant technology will take in this part of CommonSpirit's world remains muted due to our continued work with surgeons who utilize other preferred contracted technology. Nationally my SSRM team as a whole is well aware that Applied has undermined our standard rollout processes ….

*Id.* at 202:6–12; *see also* Dkt. 294-11 (identifying Medtronic's affirmatively designated deposition testimony of Ms. Lehman). Medtronic relies on these customer statements in an attempt to show customers were dissatisfied with Applied's products and sales techniques. Medtronic cannot reasonably seek to preclude Applied from introducing customer statements when Medtronic seeks to do the same.

### III. CONCLUSION

Accordingly, the Court should admit Applied's proffered customer statements. The Court should admit customer statements that show the

---

[2] Any discussion among Applied personnel concerning a customer's state-of-mind or motives are also admissible for the effect on Applied as the listener.

customers' reasons for purchasing ABDs from Medtronic instead of from Applied. Fed. R. Evid. 803(3). Those statements are also not hearsay when offered for their effect on Applied. Fed. R. Evid. 801(c)(2).

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 19, 2026

By: /s/ *Joseph R. Re*
    Joseph R. Re
    Stephen C. Jensen
    Joseph F. Jennings
    Stephen W. Larson
    Cheryl T. Burgess
    Adam B. Powell

Attorneys for Plaintiff,
APPLIED MEDICAL RESOURCES CORPORATION

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2

The undersigned, counsel of record for Plaintiffs' Applied Medical Resources Corporation, certifies that this brief contains 2,444 words, which [choose one]:

 X  complies with the word limit of L.R. 11-6.1.

 __ complies with the word limit set by court order dated [date].

Dated: January 19, 2026                By: */s/ Joseph R. Re*
                                           Joseph R. Re

                                       Attorneys for Plaintiff,
                                       APPLIED MEDICAL RESOURCES
                                       CORPORATION