Wilkinson Stekloff LLP
Brian L. Stekloff (*pro hac vice*)
Sarah Neuman (*pro hac vice*)
bstekloff@wilkinsonstekloff.com
sneuman@wilkinsonstekloff.com
2001 M Street, NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000

Wilkinson Stekloff LLP
Keri Arnold (*pro hac vice*)
130 W 42nd St., 24th Floor
New York, NY 10036
karnold@wilkinsonstekloff.com

Cleary Gottlieb Steen & Hamilton LLP
Leah Brannon (*pro hac vice*)
Alan B. Freedman (*pro hac vice*)
lbrannon@cgsh.com
afreedman@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 974-1500

*Attorneys for Defendant Medtronic, Inc.*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| APPLIED MEDICAL RESOURCES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MEDTRONIC, INC.,<br><br>Defendant. | Case No. 8:23-cv-00268-WLH-DFM<br><br>**DEFENDANT MEDTRONIC'S RESPONSIVE BENCH BRIEF IN SUPPORT OF EXCLUDING APPLIED'S CUSTOMER HEARSAY**<br><br>**HON. WESLEY L. HSU** |

## I. INTRODUCTION

Applied seeks to admit (i) emails from customers, (ii) documents from Applied employees purporting to relay conversations with customers, and (iii) testimony from its own witnesses of recollections of conversations with customers, all of which purport to explain why hospitals chose not to do business with Applied. All of it is hearsay. Worse, it is precisely the sort of untested and unreliable hearsay against which the rules of evidence are designed to protect. A customer has every incentive to break the news of lost business to Applied's assigned sales representative gently ("it's not you") and avoid the more uncomfortable reasons for the customer's decision, such as Applied's low quality, bad pricing, or poor salesmanship. The sales person at Applied purporting to relay information up the chain has even *more* incentive to blame Medtronic's contracts, rather than admitting his own failure to sell. Thus, whatever hospitals said (or someone at Applied says they said) may not be the hospital's true reasons behind its purchasing decision.

Applied had every opportunity to seek testimony from these hospitals about the reasons why they actually chose not to purchase from Applied, but Applied *did not depose a single hospital customer* in this case. Courts consistently find hearsay inadmissible in these circumstances.

Applied argues that it does *not* want the hearsay admitted for the truth of the matter asserted, it does *not* want to use the hearsay to prove lost sales, and it does *not* want to use the hearsay to prove Medtronic's conduct actually occurred. ECF 324 "Br." at 1. Rather, Applied argues that these unreliable statements on core issues in the case should be admitted for the sole purposes of showing the state of mind of the hospital declarant under 803(3) or for the effect on the listener at Applied under 801(c)(2). *Id.* These arguments do not hold.

Moreover, Applied wholly fails to address the problem that the proffered evidence is fundamentally unreliable. In short, the evidence should not be admitted because it is inadmissible hearsay with no indicia of reliability, and admitting it would be more prejudicial than probative under Federal Rule of Evidence 403.

## II. ANALYSIS

### A. The documents and testimony are hearsay and no exception applies.

Applied seeks to use out of court statements from its own employees and third party hospital employees to establish the truth of the matter asserted—the reason why customers chose not to buy from Applied. For instance, President of Advanced Energy Gary Johnson has a list of at least six hospitals that he says told him out of court, mostly after the complaint was filed, the reasons why they did not do business with Applied. *See* ECF No. 313-3 (Johnson Dep. Tr. 235:22–236:10). As best Medtronic can tell, these oral conversations are not corroborated by documentary evidence. Applied also has a number of documents on its exhibit list that include either communications with hospitals or communications purporting to relay communications with hospitals.[1] This is quintessential hearsay, including multi-level hearsay, under Rules 801, 802, and 805, and no exception applies. *United States v. Kootswatewa*, 893 F.3d 1127, 1132 (9th Cir. 2018) ("Hearsay statements are inadmissible as a general rule because they typically lack indicia of trustworthiness."); *L.A. Times Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880, 887 (C.D. Cal. 2006) (the purpose of the hearsay rule is "to exclude evidence that lacks reliability due to faults in the perception, memory, or narration of the declarant.").

A court in this circuit recently addressed similar evidence in *Surgical Instrument Service Co. v. Intuitive Surgical, Inc.*, 2024 WL 5440733 (N.D. Cal. 2024). *Intuitive* was an exclusive dealing case involving a dispute between medical device companies. At trial the plaintiff sought to introduce statements by hospital representatives that they wanted to purchase from the plaintiff but could not "take the risk of being penalized." *Id.* at *1. Dispensing with the 803(3) argument that Applied makes here, the court found the evidence to be "hearsay for which [the plaintiff] has not offered a modicum of reliability," and which therefore could "not be used to

---

[1] *See, e.g.*, TX 726; TX 729; TX 730; TX 722; TX 2085; TX 645; TX 732; TX 741; TX 745; TX 793; TX 898; TX 2033.

2

prove the fact of lost opportunity." *Id.* Other courts have reached the same conclusion. *See, e.g.*, *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1274-75 (3d Cir. 1995) (excluding out of court customer statements offered to prove lost profits antitrust damages); *AngioDynamic, Inc. v. C.R. Bard, Inc.*, 2022 WL 4333555 at *3-5 (N.D.N.Y. September 19, 2022) (excluding hearsay statements by customers offered to support fourteen purportedly lost customers in an antitrust case); *Amerisource Corp. v. RxUSA Int'l Inc.*, 2009 WL 235648 at *2 (E.D.N.Y. Jan. 30, 2009) (customer statements inadmissible to prove injury or damages).

### B. The documents and testimony have no indicia of reliability.

The evidence Applied seeks to rely on is particularly suspect because of the motivations of the individuals involved to make statements that may not be complete or may not be accurate at all: hospital employees have motivations to avoid rupturing relationships with Applied employees and Applied itself; Applied employees have motivations to blame Medtronic rather than their own product or sales efforts.

Additional evidence in the record illustrates this point. *Compare, e.g.*, Stekloff Decl. Ex. A, Favilla Dep. Tr. 70:17-71:5 (explaining how one hospital trialed Voyant, but "the products did not meet up with the clinical demands of the surgeons. So [the hospital] was forced to provide [Medtronic] the business back," even as the hospital said that Medtronic was not "even close" to matching Applied's economic value), *with* TX 645 (Applied employees reporting that they were told, by the same hospital about the same incident, that "Medtronic came back with a cost reduction on the LigaSure and a rebate on product lines such as Endomechanical and stapling which eroded the Applied savings opportunity. . . . [I]f this Medtronic deal was not being offered that they would award the business to Applied Medical.").

None of these motivations can be tested when the hospital representative who made or supposedly made the statement is not present for cross examination, which is precisely why such hearsay is not admissible. *See Intuitive*, 2024 WL 5440733 at *1 (rejecting the same arguments that Applied makes here); *Amerisource*, 2009 WL 235648 at *3 (rejecting 803(3) argument because admissibility must ultimately be

3

guided by Rule 403 and probative value was outweighed by substantial unreliability of the proffered hearsay).[2]

### C. The Court should reject Applied's backdoor arguments.

Applied's main argument in favor of admission is that the material is not admitted for the truth of the matter asserted, but because the hospital statements supposedly show motive or state of mind of the declarant under Rule 803(3). ECF No. 324 at 2-4. But asserting that the evidence reflects the actual state of mind or motive of the hospital declarant and why it was choosing not to buy from Applied assumes the truth of the matter, which is entirely unsubstantiated. Applied bears the burden and, despite vague promises its brief proffers no independent, admissible evidence of the business being lost or the reason for it.[3] Br. at 6. Courts require the proponent to demonstrate the truth of the matter before admitting hearsay like this for another purpose. *See, e.g.*, *Discover Fin. Servs. v. Visa U.S.A. Inc.*, 2008 WL 4560707, at *1 (S.D.N.Y. 2008) (third party testimony related to motives for lost business *could* be admissible under 803(3) *if* Plaintiff proffered otherwise admissible proof of lost business before opening statements). Applied itself recognizes this. *See* Br. at 6 (characterizing *Callahan v. A.E.V., Inc.*, 182 F.3d, 237, 253 (3d Cir. 1999), and *Marjam Supply Co. v. Firestone Bldg Prods.*, 2019 WL 1451105 at *4 (D.N.J. 2019), as cases in which plaintiff had independently established lost sales).[4]

None of Applied's 803(3) cases directly involve the substantial risk present here that unreliable hearsay from declarants who have obvious mixed motivations

---

[2] Indeed, in *Consildated Credit Agency v. Equifax, Inc.*, 2005 WL 6218038 (C.D. Cal. 2005), cited by Applied, Br. at 3, the court granted leave to depose any customers whose statements would be proffered by the plaintiff, a solution to the reliability problem that is not practical here, and permitted defendant to renew the motion. *Id.* at *2 & n.3.

[3] Applied's own case, *Los Angeles International Corp. v. Prestige Brands Holdings Inc.*, 2023 WL 8896249, at *3 (C.D. Cal. 2023), recognizes that customer statements are not admissible as "evidence of facts recited as furnishing motives in antitrust cases" (quoting *Equifax*)).

[4] Some of Applied's cases are decided at the summary judgment stage not trial, where (continued…)

will be presented to the jury through a backdoor on important issues in the case.[5] *Cf. e.g.*, *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011) (no error to admit evidence of consumers confused about a website in Lanham Act case); *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191, 204 n. 13 (2d Cir. 2015) (consumer mattress purchaser statements admitted in a bench trial had minimal "risk of insincerity in a potential customer's statement why products were not being ordered"); *Mathew Enter. Inc. v. Chrysler Grp. LLP*, 2016 WL 11432038 at *4 (N.D. Cal. 2016) (admitting evidence from consumer car buyers); *Hydrolevel Corp. v. Am. Soc'y of Mech. Eng'rs, Inc.*, 635 F.2d 118, 128 (2d Cir. 1980) (no error in admitting hearsay about product quality); *Duren v. E.I. DuPont De NeMours & Co.*, 2011 WL 13234053 (E.D. Ark. 2011) (emphasizing the importance that the hearsay admitted under 803(3) be "made with no apparent motive for misstatement").[6] Such risk is especially great here, where Applied seeks to offer "motive" evidence regarding corporate entities that act only through agents who may hold multiple, incompatible motives. *See* Stekloff Decl. Ex. B, Hilal Dep. Tr. 189:19-190:3 ("Obviously, there is more than one party at [a hospital]. It is very, very possible that certain surgeons want to see the product, want to know about it and certain administrators don't want

---

the question is whether the material could be presented in an admissible form under Fed. R. Civ. P 56(c)(2). *See US Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers*, 2006 WL 2136249 (S.D.N.Y. 2006) (striking certain paragraphs of statement of fact); *Marjam Supply*, 2019 WL 1451105 (denying summary judgment); *Callahan,* 182 F3d at 252 (summary judgment); *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524 (3d Cir. 1990) (noting in a footnote that district court erred in excluding certain evidence on summary judgement).

[5] Some of Applied's cases have almost no reasoning and do not grapple with the issues and therefore are of limited value to the Court. *See e.g.*, *US Wholesale Outlet & Dist. Inc. v. Innovation Ventures, LLC*, 2019 WL 8503715 (C.D. Cal. 2019) (two sentences of analysis); *Lahoti*, 636 F.3d 501 (similar).

[6] Applied's cases also make clear that separate analysis is required for each level of hearsay, yet Applied ignores this requirement too. *See, e.g., Mathew Enter. Inc. v. Chrysler Grp. LLP*, 2016 WL 11432038 at *4 (N.D. Cal. 2016) (admitting "personal observations" but not double-hearsay "recounted" conversations on the facts at issue in that case).

it to happen."); *Cf. Complete Ent. Res. LLC v. Live Nation Entertainment, Inc.*, 2017 WL 11682916 (C.D. Cal. 2017) (permitting evidence of individuals' motives).

Applied's argument that the reason to admit this material is to show its effect on Applied relies on one footnote in an out of circuit case. *See* Br. at 5. But *Curtis Lumber Co. Inc. v. Louisiana Pacific Corp.*, 618 F.3d 762 (8th Cir. 2010), involved duress under the Arkansas Deceptive Trade Practices Act and did not involve a duty to mitigate. Ultimately, Applied offers no persuasive explanation of why the effect on the listener matters here: it simply makes an unexplained reference to "Applied's great efforts to combat the bundle" and also "why Applied brought this litigation," which is not relevant here.

### III. CONCLUSION

For the foregoing reasons, the Court should exclude Applied's hearsay that purports to show why customers did not do business with Applied.

Dated: January 20, 2026

Respectfully submitted,

By: */s/ Brian L. Stekloff*

Wilkinson Stekloff LLP
Brian L. Stekloff (pro hac vice)
Sarah Neuman (pro hac vice)
bstekloff@wilkinsonstekloff.com
sneuman@wilkinsonstekloff.com
2001 M Street, NW
Washington, DC 20036
Telephone: (202) 847-4000

Wilkinson Stekloff LLP
Keri Arnold (*pro hac vice*)
130 W 42nd St., 24th Floor
New York, NY 10036
karnold@wilkinsonstekloff.com

Cleary Gottlieb Steen & Hamilton LLP
Leah Brannon (*pro hac vice*)
Alan B. Freedman (*pro hac vice*)
lbrannon@cgsh.com
afreedman@cgsh.com
2112 Pennsylvania Ave., NW
Washington, DC 20037
Telephone: (202) 974-1500

Liang Ly LLP
Jason L. Liang (SBN 251235)

6

John K. Ly (SBN 247477)
jliang@lianglyllp.com
601 South Figueroa Street, Suite 1950
Los Angeles, CA 90017
Telephone: (213) 262-8000
Facsimile: (213) 335-7776

*Attorneys for Defendant Medtronic, Inc.*