Stephen C. Jensen (SBN 149894)
steve.jensen@knobbe.com
Joseph R. Re (SBN 134479)
Joe.re@knobbe.com
Joseph F. Jennings (SBN 145920)
Joe.jennings@knobbe.com
Stephen W. Larson (SBN 240844)
stephen.larson@knobbe.com
Cheryl T. Burgess (SBN 250101)
Cheryl.burgess@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Adam B. Powell (SBN 272725)
adam.powell@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
3579 Valley Centre Drive
San Diego, CA 92130
Phone: (858) 707-4000
Facsimile: (858) 707-4001

Attorneys for Plaintiff,
APPLIED MEDICAL RESOURCES CORPORATION

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| APPLIED MEDICAL RESOURCES CORPORATION, a California corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>MEDTRONIC, INC., a Minnesota corporation,<br><br>                    Defendant. | Case No. 8:23-cv-00268-WLH-DFM<br><br>**APPLIED MEDICAL RESOURCE CORPORATION'S RESPONSE TO MEDTRONIC'S TRIAL BRIEF SEEKING TO EXCLUDE EXPERT OPINION**<br><br>Trial: January 20, 2026<br><br>Hon. Wesley S. Hsu |

Medtronic already challenged Mr. Orszag's opinions in its motion for summary judgment (Dkt. 147-1 at 22–25, 27–28), its *Daubert* motion (Dkt. 136-1), and in its motions *in limine* (Dkt. 209 at 6–8). Medtronic now brings a **fourth** challenge to the same opinions on the ***morning*** that Mr. Orszag will testify.

Medtronic identifies nothing new or surprising that requires such an emergency motion. Medtronic rehashes arguments this Court already rejected. Medtronic also repeatedly mischaracterizes Orszag's opinions, the trial record, the caselaw, and even the parties' meet and confer. The Court should reject Medtronic's fourth attempt to exclude Orszag.

### A. **Medtronic's Brief Is An Untimely *Daubert* Or *In Limine* Motion**

The Court's Civil Pretrial Schedule and Trial Order requires *Daubert* motions "be heard not later than eight (8) weeks before the FPTC." Dkt. 47 at 8. It also requires motions *in limine* be filed "at least twenty-eight (28) days before the FPTC" and heard "at the FPTC." *Id.* at 7-8. Medtronic's request does not satisfy those standards.

There is nothing surprising about the opinions that Medtronic seeks to exclude. As explained in more detail below, Mr. Orszag's opinions are all plainly disclosed in Mr. Orszag's expert reports that Applied served months ago. And Medtronic has also already made—and lost—many of the arguments that it raises in its "bench brief." *See* Dkt. 147-1 (summary judgment brief) at 22–25, 27–28; Dkt. 136-1 (*Daubert* brief); Dkt. 209 (*in limine* brief) at 6–8.

During the meet and confer, Medtronic did not deny that it could have raised these issues earlier. Instead, it argued that it did not do so because the Court limits the parties to five *in limine* motions. But Medtronic could have sought "leave to file additional motions." Dkt. 47 at 8. Or Medtronic could have prioritized this challenge over other requests. At a minimum, Medtronic could have raised these issues long before the day that Mr. Orszag takes the stand. The Court should deny Medtronic's fourth request to exclude Orszag.

### B. Medtronic's Cited Cases Do Not Support Derailing Trial With An Untimely And Duplicative Challenge To Orszag

Medtronic begins its brief by asserting that "otherwise admissible expert testimony" may be excluded under Rule 403. Br. at 1. Medtronic's supporting authorities addressed wildly different circumstances.

Medtronic's primary case—and the only case that appears to have addressed *expert* testimony at trial—addressed extreme circumstances unlike this case. *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 999 (9th Cir. 2001). There, the Ninth Circuit reversed the district court for admitting "expert" testimony that "Korean companies" have a "propensity to engage in fraudulent activity." *Id.*; *see also id.* (testifying California was the most likely location of the money because "California has the largest concentration of Korean people"). The "expert" was allegedly qualified to offer such "opinions" in part because he "served five tours of duty in Korea" and was "married to a Korean woman." *Id.*

Medtronic's other cases addressed expert opinions at the *Daubert* or motion *in limine* phase. Br. at 1-2. The two antitrust cases both involved unique circumstances in which the court held the defendant could not pursue a certain failure-to-mitigate defense and then excluded expert testimony on that defense. *In re NFL's "Sunday Ticket" Antitrust Litig.*, 2024 WL 1751781, at *4 (C.D. Cal. Apr. 17, 2024); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 6216664, at *11 (N.D. Cal. Oct. 25, 2016).

Medtronic makes no similar argument here. And Medtronic's other cited cases were criminal cases that are even further afield. *See United States v. Pritchard*, 993 F. Supp. 2d 1203, 1213–14 (C.D. Cal. 2014) (**denying** MIL to exclude forensic scientist); *United States v. Herrera*, 788 F. Supp. 2d 1026, 1027 (N.D. Cal. 2011) (*Daubert* order characterizing "opinion" as "a small dose of medicine in a large bottle of snake oil" and holding "the jury should not be burdened with trying to drain the snake oil to find the medicine").

### C. The Court Should Again Reject Medtronic's Challenge to Orszag's Transactional DAT Calculation

Medtronic seeks to exclude Orszag's transactional approach that applies the DAT across multiple contracts. Medtronic repeatedly and incorrectly claims this is a "new opinion." Dkt. 338 at 2. It is not. Orszag disclosed this opinion **a year and a half ago** in his August 16, 2024 Opening Report. Orszag Rpt. ¶ 188; *id.* at n.474; *id.* Appendix F at 275–79. He devoted **five pages of tables** calculating the DAT under this approach. *See id.* at 275–79 ("Transactions Data Products"). He then updated those tables in his October 1, 2024 revised report. Applied expressly relied on his analysis in its Supplemental Summary Judgment Brief (Dkt. 239-1 at 8). The Court denied summary judgment. *See* Dkt. 255. The Court should not allow Medtronic to raise this challenge yet again on the morning of Mr. Orszag's testimony.

Medtronic claims Applied will introduce testimony from Orszag that "Medtronic raises prices on *all* Medtronic products" regardless of whether they are associated with any discount. Br. at 2-3. Not so. As Medtronic's own expert acknowledges, Medtronic's contracts have rebates that "span multiple contracts." Murphy Rpt. ¶ 179. As Orszag explained, "Medtronic typically presents the value of all of its proposed price reductions, discounts, and rebates, across **all agreements** when presenting a deal to a hospital." Orszag Rpt. ¶ 174. Hospitals therefore face the risk of "losing all such price reductions" if they reject Medtronic's overall deal. Orszag Rpt. ¶ 174; *see* Orszag Reply ¶¶ 63, 66–67. Orszag accordingly provides a calculation that reflects the real-world risk hospitals face—making his opinion both relevant and properly grounded.

Medtronic claims Applied has no evidence supporting Orszag's approach. Br. at 4. That is incorrect. As discussed, Medtronic's own expert admits that Medtronic provides rebates that "span multiple contracts." Murphy Rpt. ¶ 179. Orszag cited evidence supporting his opinion. *See, e.g.,* Orszag ¶ 123 n.306

(citing JTX-201.0011 (summarizing multiple rebates)). Such evidence has now been entered into evidence. *See* JTX-201 (admitted document). Applied played the deposition testimony of Mr. LaCasse that supports Orszag's transactional approach. *See* LaCasse Depo. at 72:19-73:14 (played at trial) (Medtronic "customer can have multiple rebates at a given time" and those "rebates can be tied to different contracts" with "different terms").[1]

Medtronic's cases also do not support its position. Medtronic first cites a case that excluded *in limine* **factual** evidence of third-party investments in a company but allowed the **expert** to offer opinions based on those facts. *Pac. Select Fund v. Bank of New York Mellon*, 2012 WL 12886495, at *2 (C.D. Cal. July 2, 2012). Medtronic suggests its second case excluded "irrelevant" testimony that lacked "foundational facts." Br. at 3. It actually excluded opinions offered by a party who failed to demonstrate its experts were qualified. *See LuMetta v. U.S. Robotics, Inc.*, 824 F.2d 768, 771 (9th Cir. 1987) (excluding testimony from witnesses with limited or no experience).[2]

### D. Orszag Uses Average Variable Cost

Medtronic confusingly asserts that "Applied has also indicated that Mr. Orszag *may* testify about a legally irrelevant measure of cost." Br. at 5. Medtronic's argument is not tied to any Orszag slide. Nor does Medtronic cite

---

[1] Medtronic claims it met and conferred with Applied on this issue. It did not. Medtronic complained solely about the use of the word "penalties," suggesting the issue would be resolved if that word were removed. Medtronic now claims that Medtronic asked Applied to identify where the opinion appears in Orszag's report and Applied provided "three citations, none of which reflects this opinion." Dkt. 338 at 3. That did not occur.

[2] Medtronic's quote from *LuMetta* included an ellipsis that removed reference to "qualifications" in the following sentence: "where foundational facts demonstrating relevancy **or qualification** are not sufficiently established, exclusion of proffered expert testimony is justified." *LuMetta*, 824 F.2d at 771 (**underline** indicating material Medtronic omitted with ellipsis).

-4-

anything in Orszag's report. Medtronic's assertion that Applied "indicated" an intent to present such testimony is incorrect. Medtronic did not meet and confer with Applied on this issue. Nor did Applied tell Medtronic that Mr. Orszag will present such testimony. Mr. Orszag properly calculates the Discount Attribution Test using average variable cost. Orszag Rpt. (using the term "average variable cost" seventy-two times).[3]

### E. Orszag's Other Opinions Are Proper And Will Not Confuse The Jury

Medtronic also claims Orszag offers five improper "versions" of the DAT. Br. at 6-9. The Court should once again reject Medtronic's challenges.

***First***, Medtronic seeks to exclude Orszag's DAT analysis directed to sales flowing through locally negotiated agreements. Medtronic sought to exclude this analysis through *Daubert* and the Court rejected that challenge. Dkt. 199 at 10. The Court specifically rejected the argument that Mr. Orszag's analysis was "unreliable" and observed that Medtronic may proceed to attack the analysis through vigorous "cross-examination." *Id*. Applied then cited this analysis in its Supplemental Brief regarding Summary Judgment, Dkt. 239-1 at 7, which the Court resolved in Applied's favor, Dtk. 255. Medtronic never filed a motion in limine regarding such testimony. Moreover, Medtronic identifies no error in Mr. Orszag's analysis. Orszag does not use that analysis to calculate foreclosure, but rather to show that LNAs—where the parties experience the most head-to-head competition—"account for the bulk of the exclusionary effects of Medtronic's bundles." Orszag Rpt. ¶ 183.

***Second***, Medtronic challenges Mr. Orszag's DAT calculation for bundled agreements at specific hospitals. Again, Medtronic identifies no error in those calculations. Medtronic merely seeks to keep the jury from hearing about the

---

[3] Medtronic cites Applied's counsel's argument regarding a prejudicial Medtronic opening slide outside the presence of the jury. Medtronic cites nothing connecting that argument to Orszag's analysis or anticipated testimony.

economics of any specific bundle. The Court rejected this argument in no uncertain terms:

> First, PeaceHealth appears to instruct finders of fact to apply the DAT on a contract-by-contract basis. *PeaceHealth*, 515 F.3d at 906 (explaining the DAT as a test applied to each bundle). Exhibit 7 and Exhibit 8 reflect Orszag's individual DAT analysis on a sample of contracts. These Exhibits could ***help*** the jury determine if bundled discounts offered to the specific hospitals reflected in the Exhibits have the potential to exclude a hypothetical, equally efficient producer of an ABD. *See PeaceHealth*, 515 F.3d at 906.
>
> Second, Exhibits 7 and 8 and accompanying paragraphs present DAT results for the bundled discounts which have been the primary focus of the litigation, ***not*** a "cherry picked" selection. The analysis reflects DAT results for the bundled discounts offered to hospitals identified in the Complaint, hospitals subpoenaed by either party and hospitals identified by Medtronic's expert as top customers.

Dkt. 199 at 8–9 (emphases added). Far from being prejudicial, Orszag's analysis is "helpful" to the jury because it puts "events into an economic context." *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 52 (D.D.C. 2017) (internal quotations omitted). Orszag will present specific DAT results for hospitals the jury has been hearing about through witnesses like Brian Carpenter and Tim McLaughlin. Orszag's analysis will also corroborate and explain, with economic analysis, why Medtronic's bundles made it "impossible" for Applied to close various deals. *See, e.g.*, JTX-330. Orszag's analysis also supports Applied's tortious interference claim, which alleges Medtronic excluded Applied at specific hospitals. *See* Dkt. 1 ¶¶ 120, 124, 193; *Daubert v. Merrell Dow Pharms., Inc. (Daubert II)*, 43 F.3d 1311, 1317 (9th Cir. 1995) (testimony admissible where it would "assist the trier of fact to …determine a fact in issue"). Moreover, Medtronic did not object to Applied's opening slide highlighting Orszag's DAT analysis of specific hospitals. If this evidence was as prejudicial as Medtronic now asserts, it would have objected to the opening slide instead of

allowing Applied to introduce it without objection. In contrast, preventing Applied from presenting the specific expert analysis that it told the jury it would present would be very prejudicial to Applied.

**Third**, Medtronic challenges Orszag's analysis of an "average" price across all customers. Medtronic sought to exclude this analysis through *Daubert* and the Court rejected that challenge. Dkt. 199 at 10. The Court specifically pointed to Orszag's explanation that an "aggregated analysis" is "useful" because it provides a "total average picture" for "illustrative purposes." *Id*. at 10. The Court further observed that "Orszag compared this aggregated analysis to the analysis offered by Medtronic's expert for similarly illustrative purposes." *Id*. The Court thus rejected Medtronic's attacks of Orszag's analysis and observed that Medtronic may proceed to attack the analysis through "vigorous cross-examination." *Id*. Applied relied on this analysis in its Supplemental Brief Regarding Summary Judgment, Dkt. 239 at 7, which the Court resolved in Applied's favor. As Orszag explained, the "average" DAT result shows the difficulty Applied and other rivals face if they cannot perfectly set prices and target customers where Medtronic's agreements do not fail the DAT. Orszag Rply ¶ 62.

**Fourth**, Medtronic attacks Mr. Orszag's "sensitivity" analysis that accounts for the possibility that not all LigaSure sales are "contestable." Medtronic sought to exclude this analysis through *Daubert* and the Court rejected that challenge. Dkt. 199 at 10. The Court found that "Orszag's analysis is offered to contextualize his primary DAT analysis and respond to arguments proffered by Defendant." *Id*. at 11. The Court further found that Orszag's analysis is "sufficiently grounded in the facts of the case." *Id*. at 12. Applied relied on Orszag's "sensitivity" analysis on summary judgment to explain the difficulty of displacing Medtronic. Dkt. 239 at 7. The Court denied summary judgment and specifically relied on Orszag's sensitivity analysis: "Orszag's sensitivity analysis, which the Court detailed in a prior order (Order re: Daubert Motion at 11- 12),

raises a triable issue of fact that Medtronic forecloses a larger share of the ABD market than the percentage of sales which flow through DAT-failing bundles." Dkt. 255 at 16.  A party that loses on an issue on *Daubert* and summary judgment should not be permitted to reassert the same challenge on the morning of expert testimony.

Orszag's analysis is highly relevant and important to address Medtronic's argument that Applied could simply sell into the 10-20% headroom in Medtronic's agreements.  Applied's witnesses (including its Group President of Advanced Energy, Gary Johnson), explained the difficulty of selling into such headroom because hospitals fear that if they begin to purchase Applied's ABD (Voyant) and then cease purchasing when those purchases began to impact the hospital's obligations to Medtronic.  Trial Tr., Day Two, at 143:23–144:13, 147:4–148:2.  Mr. Orszag's "sensitivity" analysis explains why such sales, and product trials requiring that the hospital purchase Voyant, are problematic because they "could displace a small portion of [Medtronic's ABD product] LigaSure."  Orszag Rpt. ¶ 58.  Orszag provided a table illustrating how Medtronic's pricing is increasingly difficult to overcome as a rival attempts to convert an increasingly smaller portion of a hospital's ABD purchases. *Id.* at 129, Exs. 11-12.  Orszag's table illustrates the extreme difficulty of overcoming Medtronic's bundles if a hospital switches a small (e.g., 5%) percentage of Medtronic products.

***Fifth***, Medtronic reasserts its argument above that Orszag should not be permitted to present a DAT analysis extending across multiple agreements.  The Court should reject that argument for the reasons above.  *See Supra* Section C.

## II. CONCLUSION

For at least the reasons presented above, the Court should reject Medtronic's last-minute challenge to Orszag's opinions.

|   |   |
|---|---|
|   | Respectfully submitted, |
|   | KNOBBE, MARTENS, OLSON & BEAR, LLP |
| Dated: January 28, 2026 | By: */s/ Stephen W. Larson*<br>Joseph R. Re<br>Stephen C. Jensen<br>Joseph F. Jennings<br>Stephen W. Larson<br>Cheryl T. Burgess<br>Adam B. Powell |
|   | Attorneys for Plaintiff,<br>APPLIED MEDICAL RESOURCES CORPORATION |

-9-

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Plaintiff Applied Medical Resources Corporation, certifies that this brief contains 2,546 words, which [choose one]:

<u> X </u> complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

Dated: <u>January 28, 2026</u>     By: <u>*/s/ Stephen W. Larson*</u>
                                        Stephen W. Larson

                                        Attorneys for Plaintiff,
                                        APPLIED MEDICAL RESOURCES CORPORATION